# United States Court of Appeals
## For the First Circuit

No. 11-2301

UNITED STATES OF AMERICA,

Appellee,

v.

GISELINE PACHECO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

Thomas J. Trebilcock-Horan, Research and Writing Specialist, with whom Héctor E. Guzmán-Silva, Federal Public Defender, and Héctor L. Ramos-Vega, Assistant Federal Public Defender, were on brief for appellant.

Justin Reid Martin, Assistant United States Attorney, with whom Rosa Emilia Rodríquez-Vélez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, and Juan Carlos Reyes-Ramos, Assistant United States Attorney, were on brief for appellee.

August 13, 2013

**TORRUELLA, Circuit Judge.** On March 11, 2011, Giseline Pacheco ("Pacheco") was arrested at an airport in Puerto Rico for attempting to import 672 grams of heroin from the Dominican Republic. On April 6, 2011, the government indicted Pacheco for: (1) conspiring to possess with intent to distribute heroin in violation of 18 U.S.C. § 846; (2) possessing with the intent to distribute heroin in violation of 21 U.S.C. § 841; (3) conspiring to import heroin in violation of 21 U.S.C. § 963; and (4) importing heroin into the United States in violation of 21 U.S.C. §§ 852 and 960. Pacheco entered a straight guilty plea and was sentenced to 24 months' imprisonment and two years of supervised release.

Pacheco argues that her sentence is procedurally and substantively flawed and requests that we vacate and remand for resentencing because the district court: (1) erred in denying her request for a continuance of the sentencing hearing; (2) sentenced her under the incorrect impression that it could not forego the imposition of a term of imprisonment without the government first requesting a downward departure pursuant to U.S.S.G. § 5K1.1 (the "§ 5K1.1 motion"); and (3) did not afford her the right to allocute. We reject her contentions and affirm.

## I. Factual and Procedural Background

At the time of her arrest, Pacheco, a 20-year-old single mother of two young children, ages four and five, was pregnant with her third child. When she was detained, Pacheco named the man who

had allegedly recruited her to import the drugs (the "recruiter"). Pacheco was later able to pick the recruiter out of a lineup and expressed her willingness to cooperate in a case pending against him at the federal district court in Puerto Rico. As it turned out, a grand jury in Puerto Rico had indicted the recruiter several months earlier, but the authorities had only arrested him the day before Pacheco was detained.

On March 29, 2011, the Assistant United States Attorney ("AUSA") in charge of the case, AUSA Justin R. Martin ("AUSA Martin") contacted Pacheco's counsel to express the government's inclination to meet with Pacheco to discuss her potential cooperation to supersede the recruiter's indictment by holding him accountable for larger quantities of heroin, based on the amount Pacheco carried when she was arrested. The parties scheduled a meeting for May 11, 2011, and the government reserved grand jury time to supersede the alleged recruiter's indictment. In the meantime, the government indicted Pacheco.

During the meeting with the government, Pacheco initially recanted and denied the recruiter's involvement in the events that led to her arrest. By the end of the meeting, however, after speaking with her attorney alone, Pacheco reverted to her original version of the events, but refused to cooperate in any manner that

could reveal to the recruiter that she had done so.[1]  She also refused to testify against him before a Grand Jury or at trial. Based on this, the parties were unable to finalize a plea agreement and Pacheco entered a straight plea.

At the change-of-plea hearing, the judge asked the government if it would file a § 5K1.1 motion requesting a downward departure for substantial assistance.  The government responded it would not because Pacheco had been given the opportunity to cooperate and the recruiter had already pled guilty pursuant to a plea agreement.  The judge nonetheless strongly encouraged the parties to explore ways for Pacheco to cooperate.

According to the government, AUSA Martin and his immediate supervisor decided that, with Pacheco's assent, the government could file an informative motion in the alleged recruiter's case, prior to his sentencing.  According to the government's brief,

> although the benefit to the government of filing that informative motion was practically inexistent, because the government was already obligated under [the recruiter's] plea agreement to recommend that he be sentenced to a 108-month imprisonment term, it was the only

---

[1]  According to Pacheco, it was not until the May 11th meeting that she found out the government would ask her to testify before a grand jury and, if necessary, in open court.  After learning this, she suffered a panic attack as she recalled a traumatic experience she had when she was 15 years old testifying against a man who had assaulted her.  She also alleges that, in the previous several days, other detainees at the federal detention center where she was being held threatened her about cooperating with authorities.

option conceived by the prosecutors for arguably justifying the filing of a 5K1 motion in Pacheco's case and responding in good faith to the district court's energetic suggestion.

On August 19, 2011, the government filed the agreed-upon motion in the recruiter's case, stating that, if the case had gone to trial, it would have had a witness testify that he or she had conspired with the recruiter to import heroin from the Dominican Republic.[2] On August 25, 2011, the district court sentenced the alleged recruiter to 108 months' imprisonment, the amount of time established in his plea bargain.

On September 28, 2011, approximately five days before Pacheco's sentencing hearing, AUSA José A. Ruiz Santiago, the AUSA in charge of the criminal division, filed a sealed motion informing the district court that the government would not file a § 5K1.1 motion. Two days later, Pacheco requested a continuance of the sentencing hearing and, in a separate motion, requested an order compelling the government to produce the evidence supporting its refusal to file the promised § 5K1.1 motion.

On October 3, 2011, at the sentencing hearing, the district court denied the motion to continue the sentencing after hearing the parties' respective positions regarding the controversy surrounding the § 5K1.1 motion. The district court also heard the

---

[2] We, of course, pass no judgment upon the value the district court could have afforded to such a motion in the alleged recruiter's case.

defense's arguments in favor of a lenient sentence as expounded by Assistant Federal Public Defender Joannie Plaza Martínez ("AFPD Plaza").  As will be explained in full detail below, in the midst of what appears to be a fast-paced and tense exchange with said counsel, the district court asked Pacheco if she had anything to say.  Pacheco argues that, given the back and forth between the judge and her attorney, as well as her emotionally altered state, she did not understand she was being addressed individually or that she was being invited to speak on her own behalf.  She thus argues that resentencing is required because she was not unequivocally afforded the right to allocute.

The district court determined that Pacheco's applicable guideline range for sentencing was 46 to 57 months' imprisonment and three to five years of supervised release.  The district court, however, sentenced her to 36 months' imprisonment and three years of supervised release.  Moreover, the day after sentencing, the judge <u>motu propio</u> dropped the sentence to 24 months' imprisonment and two years of supervised release.  We take each issue in turn.

## II. <u>Analysis</u>

### A. The request for a continuance

As stated above, several days before the sentencing, the government filed a motion announcing that it would not file a § 5K1.1 motion.  It explained that Pacheco only agreed to cooperate once it was certain she would not have to testify, and contended

-6-

that her previous refusal to cooperate had resulted in the government offering the recruiter a reduced plea, which he accepted. Two days after the motion was filed, Pacheco requested a continuance of the sentencing hearing. Pacheco then requested an order to compel the government to produce the information in support of its assertion that she did not provide substantial assistance. The request explained that the government's new position was contrary to everything Pacheco had agreed to with the AUSA regarding the filing of a § 5K1.1 motion.

At the sentencing hearing, AFPD Plaza failed to convince the district court of the probable utility of a continuance. AFPD Plaza then shifted gears and argued that, if there would be no § 5K1.1 downward departure, the court could consider Pacheco's cooperation for a downward variance as supported by the arguments set forth in the Sentencing Memorandum.[3] AFPD Plaza insisted on a continuance so that she could better develop her arguments regarding the mitigating factors in Pacheco's case.

In her brief before this court, Pacheco posits that she needed the continuance to properly investigate the government's assertions and explain why her cooperation had been substantial. She points out that one of the four cooperating witnesses in the

---

[3]  Pacheco had not filed the Sentencing Memorandum before the hearing and rather informed the district court during the hearing that she intended to file it. The district court immediately requested to see a hard copy of the memorandum and read it while the hearing ensued.

the recruiter's criminal case had received a sentence of seven hours under the custody of the United States Marshals for committing similar conduct to hers. Having more time to prepare for the sentencing, she claims, would have allowed her to inform the court of all the facts prior to sentencing.

We review the denial of a motion to continue a sentencing hearing for abuse of discretion and only overturn when the movant suffered substantial prejudice. United States v. Moore, 362 F.3d 129, 135 (1st Cir. 2004). We assess each case individually and may consider any number of factors. See id. (we may consider a number of factors including "the movant's proferred [sic] reasons for needing the continuance, the amount of time necessary for effective preparation, the amount of time previously available for preparation, the extent to which the movant has contributed to his predicament, the probable utility of a continuance, the extent of the inconvenience to others of a continuance, and the likelihood of injustice or unfair prejudice to the movant from a denial of a continuance").

We see no abuse of discretion in the district court's decision to go forward with the sentencing.[4] Absent the government

_____

[4] Even though Pacheco argues in her brief that AFPD Plaza and AUSA Martin had reached an agreement regarding the filing of a § 5K1.1 motion, Pacheco does not develop a breach of contract argument. She instead focuses on the fact that a continuance was required because the government's alleged volte-face caught her off guard, and the government's stated reasons for not filing the § 5K1.1 motion were false. During oral argument, we pressed Pacheco's

actually moving for a § 5K1.1 downward departure, no amount of information Pacheco would have gathered could have allowed the court to grant such a departure for substantial assistance. In fact, during the hearing, the district court asked AFPD Plaza twice whether she could cite to a single case that would allow it to, as the judge put it, "factor into a 5K1," and she conceded she could not. That is not surprising given that "[a] substantial assistance departure can be granted only if the government moves for one." United States v. Anonymous, 629 F.3d 68, 72 (1st Cir. 2012) (citing Wade v. United States, 504 U.S. 181 (1992)).

Also, the district court was aware of the fact that the government had filed the informative motion in the recruiter's case. Even if it was not aware of the exact wording of the motion or what sentences the other alleged cooperators in that case received, the court did not abuse its discretion in not postponing the sentencing because awareness of those details still would not have allowed it to sentence Pacheco as if the government had requested a downward variance for substantial assistance. Pacheco failed to establish the probable utility of a continuance given that the information she sought, even if it demonstrated to the

counsel regarding the breach of contract theory. Even though counsel affirmed a breach of contract had taken place, he quickly redirected the discussion to the need for a continuance in light of the government's new position. We will therefore restrict our analysis to the continuance issue and not pursue the specter of a breach of contract claim.

district court that Pacheco had provided substantial assistance, would not have allowed the district court to proceed as if a § 5K1.1 motion had been filed.  As Pacheco concedes, the only actor that can ascertain whether the assistance was substantial enough to warrant a § 5K1.1 motion is the government.

Second, Pacheco cannot show that she was unable to brief the court on her arguments regarding the appropriate sentence because she in fact had her Sentencing Memorandum ready and the judge was able to read it and consider it at the hearing.  At no point did Pacheco argue that she was not able to complete her Sentencing Memorandum on time or that she needed more time to complete it.  Pacheco has thus failed to show that she suffered injustice or unfair prejudice by the district court's refusal to continue the sentencing hearing.

Third, to the extent that Pacheco claims prejudice from insufficient time to set the record straight about the alleged false statements of the government regarding the recruiter benefitting from her initial reluctance to testify against him, she is mistaken.  The government stated its position in its informative motion and Pacheco denounced its falsity both in her written opposition and at the sentencing hearing.  Thus, she had a fair opportunity to challenge the government's statements and vigorously did so.  We see no abuse of discretion in the district court's

decision to proceed with sentencing at that juncture.  We now properly turn to Pacheco's challenge of the sentence.

**B. The imposition of a term of imprisonment**

Pacheco argues that the district court imposed a prison term because it was under the incorrect impression that, in the absence of a § 5K1.1 motion, it had its hands tied and could not consider her efforts to cooperate with the government.

Even though it was not until recently that "we join[ed] other circuits in holding that, in determining the appropriate sentence within the guidelines, or in varying from the guidelines, a sentencing court has discretion to consider the defendant's cooperation with the government as an 18 U.S.C. § 3553(a) factor, even if the government has not [filed a] 5K1.1 motion for a downward departure," United States v. Landrón-Class, 696 F.3d 62, 66 (1st Cir. 2012), it is clear from the transcript of the sentencing hearing that the district court was fully aware that, in imposing the sentence, it had the discretion to consider Pacheco's willingness to cooperate.  The transcript indicates that, when AFPD Plaza insisted that the court consider Pacheco's cooperation when imposing a sentence, the district court stated more than once that it did not feel constrained in relation to the type of information it could consider:

> THE COURT: Argue your variance. You want me to vary the sentence?
>
> MS. PLAZA:  Of course, Your Honor.

THE COURT: That's what you have to concentrate on.

MS. PLAZA: I'm going to concentrate on that, but what I'm saying to the Court is that if the court is going to not consider the cooperation --

THE COURT: <u>I can consider everything.</u>

MS. PLAZA: Ok.

THE COURT: But bringing heroin into the United States is a big time crime, and she has to serve time for that. I'm sorry.

. . . .

MS. PLAZA: Since the Court seems to be -- Your honor, there are other factors to take into consideration. But given the Court's presentation at the Change fo Plea hearing, it leads me to believe that the Court would only consider releasing my client if a 5K motion had been filed. I think that is of course the Court's prerogative, but I think that's not demanded of section 3553(a) for the minimally sufficient sentence. And I think my client has all the factors on her behalf. It should be considered by the Court.

THE COURT: <u>I looked at your Sentencing Memorandum, and I am considering it.</u>

. . . .

MS. PLAZA: . . . But the defendant's attempts to cooperate can be taken into consideration. And I cite in my memorandum cases that say that the Court can use that information if not for a 5K reduction, but for other --

THE COURT: <u>You heard that I was going to consider the variance</u>.

(emphasis added).

We think it is sufficiently clear that the district court understood it had discretion to consider Pacheco's attempts to cooperate and, in fact, never denied having discretion to consider it. But having discretion to consider something does not entitle a defendant to force the district court to factor the issue being considered into its final decision. It is evident from the transcript that, although the court was willing to impose a sentence that was significantly lower than what the Guidelines recommended and said it could consider the cooperation, it also considered the charged offenses to be sufficiently serious to warrant imprisonment. We see no abuse of discretion in the district court's choice to impose a term of imprisonment.

## C. The opportunity to allocute

The transcript of the sentencing hearing indicates an escalating tension between AFPD Plaza and the district court judge when the judge attempted to proceed with sentencing and AFPD Plaza attempted to argue in favor of a lenient sentence for Pacheco. Immediately before and immediately after putting an end to a fast-paced discussion with AFPD Plaza by telling said counsel to "shut up," the district court asked Pacheco if there was anything she

wanted to say.[5]  The relevant portion of the hearing transpired as follows:

> PLAZA: Well, Your Honor . . . [s]he was vulnerable, and she was used for this criminal venture. And the purpose -
>
> THE COURT: Listen, I've heard you enough. Anything you want to say, ma'am?"
>
> PLAZA: Your Honor, I ask the Court -
>
> THE COURT: I'm asking you to shut up. Anything you want to say, ma'am? Anything?
>
> THE DEFENDANT: (Shaking head from side to side.)
>
> THE COURT: Anything? [AUSA] Martin, else?
>
> MARTIN: Nothing, Your Honor.
>
> THE COURT: Very well.

We review de novo a sentencing court's compliance with Fed. R. Crim. P. 32(i)(4)(A).  United States v. Rivera-Rodríguez,

---

[5]  During oral argument, we requested that the parties investigate whether the sentencing hearing had been recorded.  The government filed a motion stating that personnel at the district court had indicated that, when a court reporter is present, proceedings are not recorded using FTR (ForTheRecord).  Subsequently, Pacheco's counsel filed a motion and a copy of an email in which management personnel at the district court told him that no FTR recording existed, but whether or not the court reporter decided to make an informal recording, was "a personal preference outside [their] jurisdiction."  Pacheco's counsel requested that we issue an order to compel the court reporter who transcribed the sentencing hearing in this case to reveal whether she had recorded the hearing.  We denied the motion.  If no FTR (the only recording method authorized to record hearings at the district court) exists because a court reporter was present, we will only review the official transcript of the hearing.

617 F.3d 581, 605 (1st Cir. 2010) (citing <u>United States</u> v. <u>Burgos-Andújar</u>, 275 F.3d 23, 28 (1st Cir. 2001)).

Pursuant to Fed. R. Crim. P. 32(i)(4)(a)(ii), before imposing its sentence, a court must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence."  In <u>Green</u> v. <u>United States</u>, 365 U.S. 301 (1961), the Supreme Court recognized the long history of the common law right of allocution.  It stated that, "[t]aken in the context of its history, there can be little doubt that the drafters of Rule 32[] intended that the defendant be personally afforded the opportunity to speak before imposition of sentence." <u>Id.</u> at 304.  Although the Supreme Court in <u>Green</u> reviewed a transcript it described as being, "unlike a play, [because it] is unaccompanied with stage directions which may tell the significant cast of the eye or the nod of the head," the Court focused on what the transcript explicitly indicated.  <u>Id.</u> at 304-05.  It found that "[t]he single pertinent sentence -- the trial judge's question 'Did you want to say something?' -- may well have been directed to the defendant," and refused to speculate whether it was addressed to counsel or to anyone else who may have been present at the hearing.[6]  <u>Id.</u> at 304.

---

[6]  The Court in <u>Green</u> gave significant weight to the fact that the challenge had been raised several years after the sentencing took place.  We do not think, however, that the Court would have come out in favor of Green had the argument been raised earlier given the obvious weight the Court also gave to "[t]he single pertinent

-15-

The Supreme Court in <u>Green</u> instructed courts to, "as a matter of good judicial administration, unambiguously address themselves to the defendant [and to] . . . leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing." <u>Id.</u> at 305. This circuit has also consistently requested that courts comply with Fed. R. Crim. P. 32 by "address[ing] the defendant[s] personally and allow[ing] [them] to speak on all topics." <u>Burgos-Andújar</u>, 275 F.3d at 29 (internal quotation marks omitted). We have also recognized that the right may be satisfied by affording defendants the "functional equivalent" of what is required by the rule in question. <u>United States</u> v. <u>Alba Pagán</u>, 33 F.3d 125, 129 (1st Cir. 1994). To achieve functional equivalency, "the court, the prosecutor, and the defendant must at the very least interact in a manner that shows clearly and convincingly that the defendant knew he had the right to speak on any subject of his choosing prior to the imposition of his sentence." <u>Id.</u>

Pacheco argues that she began sobbing uncontrollably after she heard the district court state earlier in the hearing that importing heroin into the United States is a crime that must entail a term of imprisonment. She claims that her crying, and the fact that she was not addressed individually, and the fact that she was not formally informed of her right to make a statement on her

sentence." <u>Green</u>, 365 U.S. at 304.

-16-

own behalf, prevented her from addressing the court. Pacheco, however, clearly acknowledges in her brief that she was addressed personally. Pacheco further argues that the district court did not pause to ask her what she meant to say by shaking her head.

While Pacheco makes several arguments in her attempt to inject ambiguity into the transcript of the hearing, we are unpersuaded. The transcript reflects that Pacheco was afforded the right to speak on any topic of her choosing when the district court addressed her personally (as she concedes) and twice, if not thrice, asked if she wanted to say anything. Our cases only require that defendants be addressed personally and be invited to speak on any topic before sentencing. Neither the Supreme Court nor this court has ever required that a sentencing court employ a specific set of words to notify a defendant of his or her right to allocute. To the extent Pacheco may be arguing that asking whether she had anything to say is not technically an invitation to speak, we plainly disagree and refuse to go down the semantics rabbit hole.

Pacheco argues she was sobbing uncontrollably and may not have even understood what was being said to her. She further argues that she might have even been shaking her head from side to side in response to something other than to the question being posed to her. We decline Pacheco's invitation to speculate as to possible alternative meanings of her actions. Pacheco was

personally asked a question and she immediately shook her head from side to side.  Given the context, we believe the only reasonable interpretation of that action is that she had nothing to say to the court in response to its question, "Do you have anything to say, ma'am?"  Even though it would have been ideal given the circumstances, we do not think it was necessary for the court to elicit or even force a verbal response from Pacheco.  Further, once she declined to speak, the district court had no obligation to insist that she seize the opportunity to speak.  In sum, we find no merit to Pacheco's claim that she was not afforded the right to allocute.

### III. Conclusion

For the reasons set forth above, we affirm the district court's sentence.

**Affirmed**.

**-Dissenting Opinion Follows-**

**LIPEZ, Circuit Judge, Dissenting.** Although I concur with the majority that the district court acted within its discretion by denying Pacheco's motion for a continuance, I conclude that Pacheco was deprived of her opportunity to allocute before sentencing. I would therefore vacate the sentence and remand for a resentencing that would give her that opportunity.

The Supreme Court has emphasized both the historical provenance and the substantial importance of permitting "[the] defendant, personally, to have the opportunity to present to the court his plea in mitigation." Green v. United States, 365 U.S. 301, 304 (1961). In the words of the Seventh Circuit,

> [w]ith historical roots in the common law, the opportunity to plead for mercy is another provision in a procedural body of law designed to enable our system of justice to mete out punishment in the most equitable fashion possible, to help ensure that sentencing is particularized and reflects individual circumstances.

United States v. Barnes, 948 F.2d 325, 328 (7th Cir. 1991); see also United States v. Burgos-Andújar, 275 F.3d 23, 28 (1st Cir. 2008) (noting "our long tradition of giving all defendants the right to directly address the court and plead for mercy"). We have accordingly described the right of allocution as "sacrosanct." United States v. Genao-Sánchez, 525 F.3d 67, 71 (1st Cir. 2008). Therefore, "[t]he burden of complying with the right of allocution[] rests with the court and not the defendant," and the court bears the responsibility of "mak[ing] sure the defendant

-19-

understands that [she] has the right to say anything [she] wants before sentence is imposed."  United States v. Vasquez, 216 F.3d 456, 458-59 (5th Cir. 2000).

Here, the record shows that for much of the sentencing hearing, the district court and defense counsel engaged in a contentious exchange regarding a number of issues.  The majority notes the "escalating tension" between the trial judge and counsel, compounded by counsel's confused and repetitive presentation and the trial judge's increasing impatience with her arguments.  Toward the end of the hearing, the district court's vexation reached its peak.  In response to counsel's concern with the court "informally [telling] the client the Court is going to impose jail time," the trial judge said: "Wait a minute.  Do you honestly think that a case involving heroin should be allowed without jail time?"  After this statement was interpreted for her, Pacheco asserts (and the government does not dispute) that she began weeping.[7]

This fraught dialogue culminated in the passage the majority quotes, where the district court told counsel that he had "heard [her] enough" before asking Pacheco whether she had anything she wanted to contribute.  When counsel persisted, the court

---

[7]  As the majority notes, we cannot listen to the recording of the sentencing hearing, which might have given us a better feel for the atmospherics of the exchanges.  But the transcript speaks for itself.  To the extent that we have any doubts about the impact of the words on the page on Pacheco's right to allocute, we must resolve them in Pacheco's favor.  See United States v. De Alba Pagán, 33 F.3d 125, 129 (1st Cir. 2009).

"ask[ed her] to shut up" before turning to Pacheco and inquiring once again whether she had anything to say.

On the basis of the exchanges between the judge and the defendant, the majority concludes that "Pacheco was personally asked a question and she immediately shook her head from side to side. Given the context, we believe the only reasonable interpretation of that action is that she had nothing to say to the court in response to its question, 'Do you have anything to say, ma'am?'"

I strongly disagree with the majority's evaluation of the context of the supposed allocution. One must look closely at the three inquiries relied upon by the majority:

First Inquiry:

THE COURT: Listen, I've heard you enough [referring to Pacheco's attorney]. Anything you [meaning the defendant] want to say, ma'am?

Second Inquiry:

PLAZA: Your Honor, I ask the Court --

THE COURT: I'm asking you [referring to Pacheco's attorney] to shut up. Anything you [meaning the defendant] want to say, ma'am? Anything?

THE DEFENDANT: (Shaking head from side to side.)

Third Inquiry:

THE COURT: Anything? [AUSA] Martin, else?

-21-

MARTIN:  Nothing, Your Honor.

THE COURT:  Very well.

So far as we can tell from the transcript, these exchanges occur in a matter of seconds.  In the first inquiry, the court prefaces its invitation to the defendant to speak with the admonition to Plaza that he has heard enough from her.  In the second inquiry, the court prefaces its invitation by literally asking her attorney to "shut up."  The defendant responds to this invitation by shaking her head from side to side.  The third inquiry consists of one word from the court, "Anything?", apparently in response to the defendant shaking her head.  But it is unclear from the transcript whether this third inquiry was directed to the defendant or the prosecutor.  Since it is Martin who responds "Nothing, Your Honor," it appears that the inquiry was directed at him.

In a formal sense, the judge invited the defendant to speak before he imposed a sentence.  But it is hard to imagine a more uninviting invitation.  The twenty-year old defendant, already in tears, has just heard the judge tell her attorney in rapid succession that he has "heard you enough" and "shut up" before she shakes her head from side to side, signaling that she has nothing to say.  Yet the majority says that "the only reasonable interpretation" of the defendant shaking her head "is that she had nothing to say to the court in response to its question."

-22-

To the contrary, I believe that the far more reasonable interpretation of this scenario is that the defendant, even if she did have something to say to the judge, was so intimidated by his display of anger and impatience with her attorney that she could not summon the courage to speak. The judge and the defendant did not "interact in a manner that shows <u>clearly and convincingly</u> that the defendant knew [she] had a right to speak on any subject of [her] choosing prior to the imposition of sentence." <u>United States</u> v. <u>De Alba Pagán</u>, 33 F.3d 125, 129 (1st Cir. 1994) (emphasis added). To the extent that there is any uncertainty about the defendant's state of mind at this critical juncture, those "[d]oubts should be resolved in the defendant's favor." <u>Id.</u> The majority has failed to do that.

It is all too easy for judges, enveloped in the courtroom by the authority of their office, to underestimate the impact of their demeanor and words on the parties before them. That is why judges, even when provoked by counsel, must always measure their manner and their words carefully. That did not happen here, with serious consequences for the defendant's right to allocute.

As the Second Circuit has explained, the Rule on allocution "demands that each defendant be allowed a meaningful right to express relevant mitigating information before an attentive and receptive district judge." <u>United States</u> v. <u>Li</u>, 115 F.3d 125, 133 (2d Cir. 1997). Thus, "creat[ing] an atmosphere that

obviously rendered it difficult for [the defendant] to present an effective and potentially persuasive allocution" may result in deprivation of the right. Id.; see also Barnes, 948 F.2d at 331 ("Because the sentencing decision is a weighty responsibility, the defendant's right to be heard must never be reduced to a formality."); United States v. Sparrow, 673 F.2d 862, 865 (5th Cir. 1982) ("Even where the judge satisfies the specifics of Rule 32, we must still assure ourselves that the compliance was not merely in form."). Here, there was at best only formal compliance with Rule 32. In substance, however, the court's handling of the sentencing hearing created a hostile atmosphere that was incompatible with the meaningful exercise of the defendant's right to allocute.

I wish to be clear on one final point. My dissent should not be read as a criticism of the trial judge's conduct toward Pacheco generally. Indeed, he displayed marked solicitude toward her in other contexts, such as at the change of plea hearing, and in urging the government to offer her a downward departure. He was unquestionably sympathetic to her plight as a young mother of two, with a third child on the way. His ire was directed at counsel, not Pacheco herself. His intemperate words were brief, a momentary lapse of control. But that lapse came at an inopportune time, with serious consequences for the defendant's right to speak to the court before sentencing.

Because I cannot agree that Pacheco was given a meaningful opportunity to allocute, I would vacate her sentence and remand so that she can be sentenced in compliance with the strictures of Rule 32(i)(4)(A)(ii). For these reasons, I respectfully dissent.