# United States Court of Appeals
## For the First Circuit

No. 16-1452

UNITED STATES OF AMERICA,

Appellee,

v.

RAFAEL TANCO-PIZARRO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José Antonio Fusté, U.S. District Judge]

Before

Lynch, Stahl, and Thompson,
Circuit Judges.

Kendys Pimentel Soto and Kendys Pimentel Soto Law Office, on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant U.S. Attorney, Chief, Appellate Division, and John A. Mathews II, Assistant U.S. Attorney, on brief for appellee.

October 6, 2017

**STAHL**, **Circuit Judge**.

Appellant Rafael Tanco-Pizarro ("Tanco-Pizarro") seeks review of his guilty plea and his resulting sentence for being a felon in possession of a firearm. The district court accepted his guilty plea and subsequently sentenced him to 57 months in prison and three years of supervised release. That sentence was to be served consecutive to his earlier sentence for violating the terms of his supervised release.

Here, Tanco-Pizarro claims his guilty plea was not knowing and voluntary, that the government breached the plea agreement it entered into with him, and that the court violated his right to allocution. After careful review, we affirm.

## I.   Factual Background and Prior Proceedings

In 2006, Tanco-Pizarro was arrested and convicted of using a firearm in connection with a drug crime and was sentenced to 60 months in prison followed by five years of supervised release. On September 19, 2015, during his period of supervised release, police officers discovered Tanco-Pizarro after an automobile accident in possession of an AK-47 type rifle, a Glock pistol, and ammunition. Subsequently, Tanco-Pizarro was sentenced to 60 months in prison for violating the terms of his supervised release. Thereafter, on December 21, 2015, Tanco-Pizarro pled guilty pursuant to a plea agreement to possession of a firearm by

a convicted felon in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2).

The relevant provisions of Tanco-Pizarro's plea agreement are the following. Paragraph 7 stipulates a total adjusted offense level of 19 and sets forth the applicable guideline sentencing recommendations for criminal history categories I to III. Paragraph 8 states that "[t]he parties do **not** stipulate as to any Criminal History Category for defendant." (Emphasis in original). Paragraph 9 reads:

> The parties agree that the defendant may request a sentence at the low end of the determined applicable guideline range stipulated in paragraph 7 of this Plea Agreement as to Count One. The government may argue for any sentence at the upper end of the applicable guideline range stipulated in paragraph 7 of this Plea Agreement as to Count One.

Paragraph 10 provides that Tanco-Pizarro waives his right to appeal so long as he "is sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of this Plea Agreement."

During the change of plea hearing on December 21, 2015, the court informed Tanco-Pizarro that the range of sentences discussed in the plea agreement was only a recommendation and that the court retained the ultimate authority to determine his sentence, to which the defendant replied that he understood. The court also discussed the waiver of appeal provision in the plea

agreement, and Tanco-Pizarro responded that he understood that he was waiving his right of appeal. Finally, when the court asked whether "[t]his is the entire Plea Agreement," Tanco-Pizarro agreed that nothing else had been promised to him. Although defense counsel requested a sentence that would run concurrently with Tanco-Pizarro's revocation sentence, defense counsel explained that Tanco-Pizarro knew it was up to the court to determine his ultimate sentence.

Tanco-Pizarro's sentencing hearing was held on April 6, 2016. The presentence report calculated his total offense level as 19 and his criminal history category as IV, resulting in a guideline range of 46 to 57 months. The court asked whether defense counsel had any allocution he wanted to make and stated that "of course [Tanco-Pizarro] can address the Court." After defense counsel argued for a sentence of 46 months, the court twice asked Tanco-Pizarro whether he would like to say something. Both times, Tanco-Pizarro responded "No."

The court sentenced Tanco-Pizarro to 57 months in prison to run consecutive to his sentence for the revocation of his supervised release. This timely appeal followed.

## II. Discussion

### A. *Knowing and Voluntary Plea*

Tanco-Pizarro claims his guilty plea was neither knowing nor voluntary because defense counsel failed to follow through on

- 4 -

his promise, allegedly made in open court, to argue for a sentence concurrent with Tanco-Pizarro's revocation sentence. In the alternative, Tanco-Pizarro argues his counsel coerced him into pleading guilty by falsely leading him to believe there was a reasonable chance he would receive a concurrent sentence.[1]

Because Tanco-Pizarro raises these issues for the first time on appeal, the standard of review is for plain error. See United States v. Vonn, 535 U.S. 55, 58-59 (2002); United States v. Ocasio-Cancel, 727 F.3d 85, 89 (1st Cir. 2013). Plain error review "entails four showings: (1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). Tanco-Pizarro's arguments fail at the first step because he cannot show error.

"A defendant's guilty plea must be voluntary, knowing, and intelligent." Ocasio-Cancel, 727 F.3d at 89. A guilty plea

---

[1] We recognize that Tanco-Pizarro's plea agreement contains a waiver of appeal provision and that, as we will discuss later, "[s]uch a provision forecloses appellate review of many claims of error." United States v. Chambers, 710 F.3d 23, 27 (1st Cir. 2013). "But where, as here, a defendant enters a guilty plea and agrees to waive his right to appeal . . . a reviewing court must 'address the merits of [his] appeal because his claim of involuntariness, if successful, would invalidate both the plea itself and the waiver of his right to appeal.'" Id. (alteration in original) (quoting United States v. Santiago Miranda, 654 F.3d 130, 136 (1st Cir. 2011)).

entered by a defendant "fully aware of the direct consequences . . . must stand unless induced by threats . . . , misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." Brady v. United States, 397 U.S. 742, 755 (1970).

First, the record does not support Tanco-Pizarro's contention that his counsel promised, in open court, to argue forcefully for a concurrent sentence. At the change of plea hearing, defense counsel stated that Tanco-Pizarro wanted him to advocate for a concurrent sentence. However, defense counsel did not promise to raise these arguments at the sentencing hearing. Rather, defense counsel told the court it was "something that [Tanco-Pizarro] and I will discuss before sentencing." Such language does not rise to the level of a promise. See United States v. Dawn, 842 F.3d 3, 6 (1st Cir. 2016), cert. denied, 137 S. Ct. 1361 (2017) (defense counsel's statement that he was "looking into some of [defendant's] prior convictions which have a significant impact on the Guidelines" was not a promise to collaterally attack those convictions). In addition, Tanco-Pizarro told the court that no one had promised him anything other than what was outlined in the plea agreement. See Bemis v. United States, 30 F.3d 220, 222 (1st Cir. 1994) ("A defendant is

- 6 -

ordinarily bound by his or her representations in court disclaiming the existence of additional promises.").

Second, despite Tanco-Pizarro's assertions to the contrary, a concurrent sentence was a possibility.  While U.S.S.G. § 5G1.3(d), Application Note 4(C) recommends that "any sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation," U.S.S.G. § 5G1.3(d) unambiguously states that "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment."  Moreover, even if the Sentencing Guidelines had provided for a consecutive sentence, the court still had the authority to depart from the guidelines and impose a concurrent sentence.  See United States v. Parks, 698 F.3d 1, 8 (1st Cir. 2012).

Finally, we find nothing else in the colloquy to cast doubt on the knowing and voluntary nature of Tanco-Pizarro's plea. The court verified his competency, explained the rights he was waiving, and reviewed the evidence and charges against him.  The court highlighted that the plea agreement was not binding on the court and verified that the plea agreement contained all the promises made to Tanco-Pizarro.  Under these circumstances, we find no plain error and we find Tanco-Pizarro's plea was knowing and voluntary.

*B. Waiver of Appeal and Purported Breach of the Plea Agreement*

Next, Tanco-Pizarro contends the government breached the plea agreement by recommending a sentence of 57 months when the highest sentence contemplated by the agreement was 46 months. "[W]e construe the terms and conditions in plea agreements in accordance with traditional principles of contract law." United States v. Marchena-Silvestre, 802 F.3d 196, 202 (1st Cir. 2015). Because "[a] defendant who enters a plea agreement waives a panoply of constitutional rights . . . we hold prosecutors to 'the most meticulous standards of both promise and performance.'" United States v. Almonte-Nunez, 771 F.3d 84, 89 (1st Cir. 2014) (quoting United States v. Riggs, 287 F.3d 221, 224 (1st Cir. 2002)).

Having found that Tanco-Pizarro's guilty plea was knowing and voluntary, we must first determine whether the waiver of appeal provision in his plea agreement bars consideration of this claim of error. We will apply a waiver of appeal provision "so long as: (1) the written plea agreement clearly delineates the scope of the waiver; (2) the district court inquired specifically at the plea hearing about any waiver of appellate rights; and (3) the denial of the right to appeal would not constitute a miscarriage of justice." United States v. Edelen, 539 F.3d 83, 85 (1st Cir. 2008) (citing United States v. Teeter, 257 F.3d 14, 25 (1st Cir. 2001)). "Of course, a waiver of appeal precludes only

those appeals that fall within its scope." Almonte-Nunez, 771 F.3d at 88.

Paragraph 10 provides that Tanco-Pizarro waives his right to appeal so long as he "is sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation." Paragraph 9 permits the government to argue for "any sentence at the upper end of the applicable guideline range stipulated in paragraph 7." Paragraph 7 calculates a total offense level of 19, but lists the applicable guideline ranges only for criminal history categories I to III.

The district court expressed concern over the apparent lack of congruity between the criminal history categories listed in Paragraph 7 and the ultimate criminal history category of IV that the court found applied to the defendant:

> THE COURT: . . . [T]he waiver considered a category of three, correct?
>
> DEFENSE COUNSEL: No, Judge.
>
> THE GOVERNMENT: No.
>
> DEFENSE COUNSEL: The waiver says if you sentence him within the applicable guideline range as determined by the Court, so he waives.
>
> THE COURT: Is it your understanding that the waiver is still applicable in this case?
>
> DEFENSE COUNSEL: Yes, sir.

Reading the waiver's scope in this manner bars consideration of Tanco-Pizarro's claims. Tanco-Pizarro was sentenced to 57 months, a sentence within the applicable guideline range for an offender with a total offense level of 19, which was stipulated to in Paragraph 7, and a criminal history category of IV, which was properly determined by the court. His sentence is therefore in accord with the terms and conditions of the plea agreement's sentencing recommendation.

It is true that defense counsel's explanation of the waiver does not match Paragraph 9's exact words. Paragraph 9 permits the government to argue for "any sentence at the upper end of the applicable guideline range stipulated in paragraph 7." Abandoning his counsel's earlier understanding of Paragraph 9, Tanco-Pizarro now reads the phrase "stipulated in paragraph 7" to limit the guideline ranges solely to those listed in paragraph 7.

We have previously confronted similar language in plea agreements. In Marchena-Silvestre, the plea agreement allowed the parties to argue for sentences based on the "applicable guideline range" and included a chart containing sentencing ranges for all possible criminal history categories. 802 F.3d at 202-03. In that context, we indicated that one would "presume[] that the undefined term 'applicable guidelines range' would refer precisely to the guideline settlement ranges set forth in the immediately prior section of the Agreement." Id. at 203. On the other hand,

- 10 -

we noted that the plea agreement's phrasing was "awkward."  Id. at 205.

Here, we again face an awkwardly written plea agreement that can be read in conflicting ways.  But, even if we were to adopt Tanco-Pizarro's new interpretation of Paragraph 9 and find the waiver of appeal provision not to apply, we would still affirm his sentence.  When a defendant fails to object to an alleged breach of a plea agreement, the standard of review is plain error.  See Puckett v. United States, 556 U.S. 129, 143 (2009).  "[T]he second prong of plain-error review . . . will often have some 'bite' in plea-agreement cases.  Not all breaches will be clear or obvious.  Plea agreements are not always models of draftsmanship, so the scope of the Government's commitments will on occasion be open to doubt."  Id.

Under these circumstances, the government did not engage in a clear or obvious breach of the agreement by recommending a sentence of 57 months.  Paragraph 7 provides the range of sentences for criminal history categories of I, II, and III only.  However, Paragraph 8 makes explicit, and states with emphasis, that "[t]he parties do **not** stipulate as to any Criminal History Category for defendant."  Because the agreement did not provide a criminal history category, the court had to determine the proper category, and the sentence imposed was appropriate to that category.

Unlike the sentence in Marchena-Silverstre, Tanco-Pizarro's sentence was in accordance with the total offense level stipulated to in the plea agreement. The parties agree that the total offense level of 19 recited in Paragraph 7 of the plea agreement was correctly calculated. See Almonte-Nunez, 771 F.3d at 89 ("[T]he sentence recommendation provisions contemplated a total offense level of 25 . . . . Thus, for the defendant to have been sentenced in accordance with the terms of the sentence recommendation provisions, he would have had to be sentenced within a GSR derived from an offense level of 25."). In this situation, "we cannot find--especially on plain error review--that a fair reading of the agreement plainly binds the government" to Tanco-Pizarro's reading of Paragraph 9. United States v. Marin-Echeverri, 846 F.3d 473, 478 (1st Cir. 2017).

C.   Allocution

Finally, Tanco-Pizarro argues the court failed to offer him a meaningful chance to allocute. See Fed. R. Crim. P. 32(i)(4)(A)(ii). We review de novo a sentencing court's compliance with the right of allocution. United States v. Rivera-Rodriguez, 617 F.3d 581, 605 (1st Cir. 2010).

The court asked Tanco-Pizarro directly "[w]ould you like to say something, sir?" When Tanco-Pizarro declined, the court asked "Nothing at all?" and Tanco-Pizarro again responded "No."

- 12 -

Earlier in the hearing, the court also informed Tanco-Pizarro that "of course he can address the Court."

Tanco-Pizarro acknowledges that the court provided him with these invitations to speak, but contends that the "context and atmosphere" surrounding these invitations rendered them ineffective. Shortly before the court asked Tanco-Pizarro whether he had anything to say, the government informed the court that Tanco-Pizarro had recently been in a fight with another inmate. In response, the court stated "I don't think Mr. Tanco claims that he's a peaceful, law abiding citizen. He's not claiming that . . . . He's not claiming that, and he will not."

The court provided Tanco-Pizarro with a sufficient opportunity to allocute. As we have made clear, "[n]either the Supreme Court nor this court has ever required that a sentencing court employ a specific set of words to notify a defendant of his or her right to allocute." United States v. Pacheco, 727 F.3d 41, 49 (1st Cir. 2013). Here, the court directly addressed Tanco-Pizarro and asked him twice whether he had anything to say. "To the extent [the defendant] may be arguing that asking whether [he] had anything to say is not technically an invitation to speak, we plainly disagree and refuse to go down the semantics rabbit hole." Id.

**AFFIRMED**.

- 13 -