# United States Court of Appeals
## For the First Circuit

No. 15-2388

UNITED STATES,

Appellee,

v.

RAFAEL TANCO-PIZARRO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lynch, Stahl, and Thompson,
Circuit Judges.

Gail M. Latouf for appellant.
John A. Mathews II, with whom Rosa Emilia Rodríguez-Vélez,
United States Attorney, Mariana E. Bauzá-Almonte, Assistant United
States Attorney, Chief, Appellate Division, and Tiffany V.
Monrose, Assistant United States Attorney, were on brief, for
appellee.

June 13, 2018

**THOMPSON**, **Circuit Judge**.  Rafael Tanco-Pizarro mounts a multi-dimensional challenge — on both procedural and substantive grounds — to the 60-month sentence he received following the revocation of his supervised release.  After giving his arguments full and fair consideration, we affirm.

### Revocation Primer

To help the reader better understand what happened below, we begin with some general observations about revocation sentencing.

By statute, a court may revoke a person's supervised release if it finds the government proved a release-condition violation by a preponderance of the evidence, see 18 U.S.C. § 3583(e)(3), which is a more-likely-than-not standard, see United States v. Edwards, 857 F.3d 420, 421 (1st Cir. 2017).  Shifting to sentencing, the court starts its analysis by calculating the suggested prison range under the federal sentencing guidelines — a range that is based on the offender's criminal history at the time of his original sentence and the grade of his violation. U.S.S.G. § 7B1.4(a).  There are three violation grades, running from grade A (the most serious) to grade C (the least serious). See id. §§ 7B1.1, 7B1.3.  The violation's grade is determined by the "conduct constituting" any "federal, state, or local offense punishable by" various "term[s] of imprisonment."  See id. § 7B1.1(a).  Armed with the relevant info, the court turns to the

guidelines' "Revocation Table."  And by plotting the offender's violation grade along the table's vertical axis and his criminal history along the table's horizontal axis, the court ends up with the advisory-prison range.  See id. § 7B1.4.

The word "advisory" is a dead giveaway that the table's ranges are nonbinding.  See United States v. Márquez-García, 862 F.3d 143, 147 n.2 (1st Cir. 2017).  A court has discretion, but not *carte blanche*.  A statute caps the stiffest possible sentences.  And the statutory cap depends "on the severity of 'the offense that resulted in the term of supervised release.'"  United States v. Fontanez, 845 F.3d 439, 445 (1st Cir. 2017) (quoting 18 U.S.C. § 3583(e)(3)).  "For that purpose," § 3583(e) groups offenses "in various categories."  Id.  And these "groupings have real-world consequences," as we recently wrote:  "upon revocation of supervised release" a

> [c]lass C or D felony bears a maximum sentence . . . of two years; a [c]lass B felony bears a maximum sentence . . . of three years; a [c]lass A felony bears a maximum sentence . . . of five years; and all other offenses bear a maximum sentence . . . of one year.

Id. at 445-46 (citing § 3583(e)(3)).  A court can sentence the offender to a prison stint within the applicable statutory maximum, after considering the relevant sentencing factors that help guide the court's discretion, see, e.g., United States v. Vargas-Dávila, 649 F.3d 129, 131-32 (1st Cir. 2011) — and we will say more about that later.

With this short primer in place, we turn to Tanco-Pizarro's case.

**Violations and Fallout**

The key facts are simple and undisputed. Almost eight years ago, in December 2010, Tanco-Pizarro finished a prison sentence for possessing a gun and ammo in furtherance of a drug-trafficking crime and began a five-year term of supervised release. And things went swimmingly, apparently — at least for a while.

In December 2014 and again in September 2015, probation notified the district court that Tanco-Pizarro had broken several conditions of supervised release. Only three are relevant here. The first one arose from probation's claim that it had tried without success to contact him "numerous times" (by phone and in person), that he had not updated his contact info as required, and that he had failed to report to the probation office as requested — all of which, probation alleged, violated a supervised-release term requiring him to "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer." The next two stem from probation's claim that while police officers in San Juan were helping Tanco-Pizarro get out of a BMW overturned on a road, they found an "AK rifle," a "Glock pistol," and a collection of magazines and ammunition in the auto — all of which, according to probation, violated supervised-release terms forbidding him from committing another "federal,

- 4 -

state[,] or local crime" and banning him from possessing "a firearm" or "ammunition" (excess capitalization omitted).

Matters went from bad to worse for Tanco-Pizarro, when in October 2015 a federal grand jury — relying on what the police had recovered from the flipped-over Beemer — indicted him for being a felon in possession of a firearm. Skipping over details not relevant to this appeal, we see that hard on the heels of this indictment, Tanco-Pizarro moved for a continuance of the final-revocation hearing and moved for discovery: filed 7 days before the hearing, the continuance motion argued that "the outcome" of the felon-in-possession case "may have an effect in the disposition of the instant case"; filed 2 days before the hearing, the discovery motion asked that the court order the government to turn over certain documents related to the felon-in-possession matter. The court denied his motions. And following a hearing, the court revoked his supervised release. To avoid consuming too many pages of the Federal Reporter, we cover only the highlights from that proceeding.

Starting with the felon-in-possession charge first, Tanco-Pizarro (through his lawyer) disputed whether the seized firearm was an automatic — in this instance (the parties agreed) an automatic firearm would support a grade A violation, while a non-automatic firearm would support a grade B violation. And he moved orally for the court to hear the testimony of the probation

officer on this point. But the court denied the motion. He then conceded that the court could rely on the indictment to determine whether he had violated his supervised release by possessing a firearm. Tackling the failure-to-report violation, he "accept[ed]" that infraction, conceding (in the words of his lawyer) that "after November of 2014," his "whereabouts . . . were unknown until the time that he was arrested" following the overturned-BMW incident — a "grade C violation." No surprise, then, that the court found that he violated his supervised release by "not reporting to the probation officer." But the court found, too, that his "new criminal behavior" also infracted his supervised release — a "grade B violation," not a grade A violation.

Using the higher-found grade and a criminal history category of II, the court calculated Tanco-Pizarro's advisory-prison range to be 6 to 12 months. See U.S.S.G. §§ 7B1.1(a)(2), 7B1.4(a). And because his original crime was a "class A felony," the court said that it could put him back behind bars for up to 60 months, the maximum penalty provided by statute.

The government pushed for a 60-month sentence. For his part, Tanco-Pizarro's counsel did not request a specific sentence. But he did ask the court to keep in mind that his client faced a sentencing range of 37 to 46 months for the felon-in-possession charge and that any sentence on that charge would probably "run[] consecutively to" any revocation sentence.

Concluding Tanco-Pizarro had shown he would not comply with the law or with the conditions of supervision, the court sentenced him to 60 months in prison — with no further supervised release. That sentence, the court added, "reflect[s] the seriousness of the offense, promote[s] respect for the law, . . . provide[s] just punishment for the offense, . . . afford[s] adequate deterrence, and protect[s] the public from further crimes" — and thus was "sufficient but not greater than necessary in this case." Significantly, neither Tanco-Pizarro nor his lawyer objected to the sentence.

Five days later, however, Tanco-Pizarro moved for reconsideration, arguing as relevant here that the district court did not adequately explain its sentencing rationale and wrongly factored "the seriousness" of the felon-in-possession crime, "the promotion of respect for the law, and punishment for" the felon-in-possession "offense" into its sentencing analysis.[1] The

---

[1] We pause to remind the bar that "[t]here is simply no such thing as a 'motion to reconsider' an otherwise final sentence . . . ." United States v. Ortiz, 741 F.3d 288, 292 n.2 (1st Cir. 2014) (second alteration in original) (quoting United States v. Dotz, 455 F.3d 644, 648 (6th Cir. 2006)); accord United States v. Gonzalez-Rodriguez, 777 F.3d 37, 41 (1st Cir. 2015). A "court may not modify a term of imprisonment once it has been imposed," see 18 U.S.C. § 3582(c), subject only (so far as pertinent here) to an exception allowing a court to "correct" an "arithmetical, technical, or other clear error" within "14 days after sentencing," see Fed. R. Crim. P. 35(a) — for other exceptions, check out Fed. R. Crim. P. 35(b) (dealing with a situation where a defendant provides substantial assistance after the sentence is imposed) and § 3582(c)(2) (dealing with a situation where the Sentencing

government opposed the motion.  And the court denied it, ruling —
in an electronic order — that Tanco-Pizarro's "lack of compliance
with the reporting requirement of his supervised release and the
fact that he was arrested while heavily armed . . . are strong
reasons for the [c]ourt to impose" a 60-month sentence.[2]

---

Commission has made a retroactive change in a guidelines range).
The advisory notes to Rule 35 make clear that

> [t]he authority to correct a sentence under [Rule 35(a)]
> is intended to be very narrow and to extend only to those
> cases in which an obvious error or mistake has occurred
> in the sentence, that is, errors which would almost
> certainly result in a remand of the case to the trial
> court for further action under Rule 35(a).  The
> subdivision is not intended to afford the court the
> opportunity to reconsider the application or
> interpretation of the sentencing guidelines or for the
> court simply to change its mind about the
> appropriateness of the sentence.

Fed. R. Crim. P. 35 advisory committee's note to 1991 amendment.
Tanco-Pizarro's motion conspicuously did not cite any authority
authorizing his reconsideration bid.  But that issue is not before
us.  So we have nothing more to say about it.

[2] We take judicial notice that after the revocation sentencing
but before the reconsideration ruling, Tanco-Pizarro pled guilty
— under a written plea agreement — to the felon-in-possession
charge.  See United States v. Tanco-Pizarro, 873 F.3d 61, 63 (1st
Cir. 2017); see generally White v. Gittens, 121 F.3d 803, 805 n.1
(1st Cir. 1997) (discussing judicial notice).  And one day after
losing his reconsideration bid, the court (acting through a
different judge) sentenced him to a 57-month prison term on the
felon-in-possession charge, to run consecutive to his 60-month
revocation sentence.  See Tanco-Pizarro, 873 F.3d at 64.  He later
appealed his felon-in-possession conviction and sentence, arguing
that his plea was not knowing and voluntary, that the government
breached the plea agreement, and that the court violated his right
to allocute before sentencing him.  See id. at 63.  But we affirmed.
Id.

- 8 -

That brings us to today's appeal, which, as we said, centers around Tanco-Pizarro's claim that the 60-month sentence is both procedurally unsound and substantively unreasonable.

## Procedural Reasonableness

### *Issues*

Tanco-Pizarro offers a number of arguments in support of his procedural-reasonableness attack. Focusing on the district court's rulings denying his motions for continuance, discovery, and the probation officer's in-court testimony, he charges that these edicts violated Fed. R. Crim. P. 32.1 and the Constitution's due-process guarantees. To his mind, these denials deprived him of the "opportunity to obtain evidence that would be available in the parallel criminal prosecution" and to "present testimony that would demonstrate the nature of the firearm" that triggered revocation. He also insists that the court wrongly considered a bunch of factors — the seriousness of, and providing just punishment for, the felon-in-possession offense, plus the need to promote respect for the law — in settling on the revocation sentence. For ease of reference we will sometimes refer to these as the "contested factors." Shifting gears, he accuses the court of not adequately considering a "mitigating factor" — *i.e.*, that he had complied with his supervised-release conditions "for four years until he failed to report" in December 2014. He then complains that the court gave no weight to the § 7B1.4 recommended

range of 6 to 12 months. And finally, he faults the court for not sufficiently explaining the reasons for the sentence.

It probably goes without saying — but we say it anyway — that the government believes Tanco-Pizarro is wrong about everything.

*Standard of Review*

We usually review procedural-reasonableness claims for abuse of discretion. See, e.g., United States v. Alejandro-Rosado, 878 F.3d 435, 438-39 (1st Cir. 2017). But Tanco-Pizarro failed to preserve a procedural-reasonableness objection at sentencing. So, with one exception discussed shortly, we review only for plain error. See id. at 439. And for him to prevail under that standard, he "must show (1) error, (2) plainness, (3) prejudice, and (4) an outcome that is a miscarriage of justice or akin to it," see United States v. Edelkind, 467 F.3d 791, 797 (1st Cir. 2006) — a tall order, indeed, see United States v. Garay-Sierra, 885 F.3d 7, 12 (1st Cir. 2018).

But wait a minute, says Tanco-Pizarro — surely the motion for reconsideration preserved the procedural-reasonableness claim — or so he protests. The problem for him is that arguments unveiled for the first time in a reconsideration motion are not preserved for appeal. See, e.g., United States v. McNicol, 829 F.3d 77, 83 n.2 (1st Cir. 2016); United States v. Almonte-Reyes, 814 F.3d 24, 27 n.4 (1st Cir. 2016). Enough said on that.

- 10 -

Now on to Tanco-Pizarro's procedural-reasonableness arguments.

*Due-Process and Rule-32.1 Concerns*

To hear Tanco-Pizarro tell it, the district court's rejection of his motions for a continuance, discovery, and in-court testimony offended his "right to Due Process" that he says is "embodied in" Rule 32.1.[3]  But unfortunately for him, we see nothing approaching plain error here.

Take first his beef with the court's denial of his continuance and discovery motions.  His basic theory is that by doing what it did, the court robbed him of the chance "to defend himself and offer potentially mitigating or exculpatory evidence." One problem for him is that the defense conceded below that since "the grand jury [found] probable cause to indict" him for the felon-in-possession crime, the court could "rely on the indictment" to determine if he violated his supervised-release conditions.  Another problem for him is that he never so much as hinted what mitigating or exculpatory evidence he hoped to come up with — not in his motions or at the revocation hearing (or for

---

[3] Under the heading "Revocation Hearing," Rule 32.1 pertinently provides that "[u]nless waived by the person, the court must hold [a] revocation hearing," at which he can "present evidence"; "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear"; and offer "any information in mitigation." Fed. R. Crim. P. 32.1(b)(2)(C), (E).

- 11 -

that matter in his appellate papers).  Indeed, he never used any combination of the words "mitigating" or "exculpatory" below. Given this concatenation of circumstances, we think it too much to expect the court to second-guess his silence on this matter and intuit what possible mitigating or exculpatory evidence there might be — which is why this is not the stuff of plain error.  See United States v. Frady, 456 U.S. 152, 163 (1982) (noting that plain error assumes an error so clear-cut that the court should have avoided it, "even absent the defendant's timely assistance in detecting it").

The same is true for the court's handling of Tanco-Pizarro's in-court testimony request.  To his way of thinking, in-court testimony would have shown that "the firearm was not fully automatic" — which, as he argued below, would have meant that he had committed a grade-B violation rather than a grade-A violation. But even a cursory glance at the sentencing transcript shows the court gave the firearm violation a B grade, just as Tanco-Pizarro had wanted.  Consequently, his argument here has no oomph.

*Consideration of the Contested Factors*

We are similarly unpersuaded by Tanco-Pizarro's claim that the court erred by integrating the contested factors — the seriousness of the offense, respect for the law, and just punishment — into its sentencing calculus.  As we said above, 18 U.S.C. § 3583(e) lets a district court revoke supervised release

- 12 -

after the court considers a collection of sentencing factors listed in 18 U.S.C. § 3553(a). Vargas-Dávila, 649 F.3d at 131-32. These factors — which guide the lower court's sentencing discretion — include

> the nature and circumstances of the offense, . . . § 3553(a)(1); the history and characteristics of the offender, id.; the need for adequate deterrence, id. § 3553(a)(2)(B); the need to protect the public, id. § 3553(a)(2)(C); and the penological needs of the offender, such as the need for special care or treatment, id. § 3553(a)(2)(D).

Id. at 131. Missing from § 3583(e)'s list is § 3553(a)(2)(A), which talks about "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

Given subsection (a)(2)(A)'s omission, Tanco-Pizarro thinks the court had no business focusing on "the severity of the" felon-in-possession offense, "respect [for] the law[,] and punishment." As he sees things, these contested factors are taboo here because they mimic subsection (a)(2)(A). Also, quoting the sentencing guidelines, he reminds us that unlike original sentencing, supervised-release revocation rests on a notion of "sanction[ing] primarily the defendant's breach of trust" and "taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." See U.S.S.G. ch. 7, pt. A, intro. cmt. 3(b). And by focusing on the contested factors, his theory continues, the court "punished

- 13 -

[him] for the new criminal conduct" and not for the breach of trust.

None of our cases requires us to accept his theory, however. And several stand in his way, two of which the parties fight about — Vargas-Dávila, 649 F.3d at 131-32, and United States v. Bohan, 496 F. App'x 95, 96 (1st Cir. 2012).

Vargas-Dávila rejected an argument similar to Tanco-Pizarro's, explaining that "[a]lthough section 3583(e)(3) incorporates by reference, and thus encourages, consideration of certain enumerated subsections of section 3553(a), it *does not forbid* consideration of other pertinent section 3553(a) factors." See 649 F.3d at 131-32 (emphasis added) (rejecting defendant's claim that "the district court improperly considered the government's statement at the revocation hearing that he had 'demonstrate[d] a lack of respect for the Court's order[s],'" which "overlap[s] with section 3553(a)(2)(A)'s instruction 'to promote respect for the law' — an instruction not incorporated . . . by reference in section 3583(e)"). Vargas-Dávila cited for support United States v. Williams, where the Second Circuit held that § 3583(e) "does not state that any particular factor cannot be considered, and we interpret § 3583(e) simply as requiring consideration of the enumerated subsections of § 3553(a), *without forbidding* consideration of other pertinent factors." 443 F.3d 35, 47 (2d Cir. 2006) (emphasis added). Tanco-Pizarro tries to

distinguish Vargas-Dávila on the grounds that there, unlike here, "the revocation sentence was appellant's second revocation, and the violation occurred shortly after appellant's release from serving the first revocation sentence." But he gives us no convincing explanation (and we at present can think of none) for why the issue should turn on the number of supervised-release revocations involved or the timing of those revocations — which dooms his bid to escape Vargas-Dávila's grasp.

Echoing Vargas-Dávila, Bohan flatly "reject[ed]" the argument that a court errs by "rely[ing] on § 3553(a)(2)(A) factors." See 496 F. App'x at 96 n.1; see also id. at 96 (spurning defendant's contention "that the sentencing court impermissibly considered § 3553(a)(2)(A) factors, including the need for the sentence imposed to 'reflect the seriousness of the offense' and to 'provide just punishment for the offense'"). Tanco-Pizarro pooh-poohs Bohan, principally because it is an unpublished decision. But we know of no authority holding that a district court plainly errs by doing what an unpublished opinion of ours permits and no binding/published opinion prohibits. See generally United States v. Knox, 593 F. App'x 536, 537-38 (6th Cir. 2015) (holding that the fact that a Sixth-Circuit opinion "is unpublished does not matter to the plain-error analysis: [b]ecause there was no Supreme Court or published Sixth Circuit case law to the contrary, the district court did not plainly err in following 'the

law, albeit unpublished, of this circuit'" (quoting United States v. Crouch, 288 F.3d 907, 910 (6th Cir. 2002))); United States v. Guerrero-Robledo, 565 F.3d 940, 946 (5th Cir. 2009) (explaining that "[i]t certainly is not plain error for the district court to rely on an unpublished opinion that is squarely on point").

If more were needed (and we do not think that it is), there is United States v. Soto-Soto, 855 F.3d 445 (1st Cir. 2017). A supervised-release-revocation case, Soto-Soto said that "the seriousness of the offense, promoting respect for the law, [and] providing just punishment" were "proper . . . sentencing factors." Id. at 451. And we see no reason why Tanco-Pizarro's case falls outside Soto-Soto's reach.

As for Tanco-Pizarro's claim that the district court punished him for his new criminal conduct, not for his breach of trust, the record shows otherwise. Among other things, the court noted that Tanco-Pizarro has shown zero ability to comply with the law and with his supervised-release conditions. To back up its point, the court stressed that he possessed "a firearm" while "being a convicted felon"; that he "did not visit the probation office as requested"; and that "his whereabouts were unknown" for a significant stretch. And, devastating to his position, these "reasons fall within the Guidelines 'breach of trust' approach" — an approach that lets courts "consider[] . . . 'the nature of the conduct leading to the revocation . . . in measuring the extent of

- 16 -

the breach of trust,' and impos[e] . . . a sentence 'intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision.'"  <u>Bohan</u>, 496 F. App'x at 96-97 (quoting U.S.S.G. ch. 7, pt. A (3)(b), intro. cmt.).[4]

The bottom line is that none of this sinks to the level of plain error.[5]

*Consideration of the Mitigating Factor*

We can make quick work of Tanco-Pizarro's claim that the district court did not consider as mitigation that he had complied with his supervised-release conditions "for four years" before going off the grid.  Tanco-Pizarro did not allude to, let alone discuss, this mitigating factor at his revocation hearing — he limited his argument for a lighter revocation sentence only to his claim that the advisory-guideline range would likely be 37 to 46 months for the felon-in-possession charge, and his revocation sentence and his felon-in-possession sentence would probably run consecutive to one another.  Under these circumstances, he "waived"

---

[4] We quote this passage from <u>Bohan</u> to counter Tanco-Pizarro's suggestion that <u>Bohan</u> actually helps his cause.

[5] Tucked in this section of Tanco-Pizarro's brief is this additional argument on the felon-in-possession matter:  "although the court did not hear evidence on the question whether the firearm was automatic, the record supports the inference that the court did factor that unsupportable allegation into the revocation." But again, the record shows with absolute clarity that the court treated the gun as a *non*-automatic weapon — hence this aspect of Tanco-Pizarro's argument is a no-go as well.

- 17 -

the claim he makes now — so not even plain-error review is possible.  See United States v. Mayes, 332 F.3d 34, 37 n.4 (1st Cir. 2003); see also United States v. Burks, 191 F. App'x 4, 5-6 (1st Cir. 2006).

*Weight Given to § 7B1.4's Recommended Sentence*

Also going nowhere is Tanco-Pizarro's argument that the district court gave zero weight to the 6 to 12 months range recommended by the sentencing table in § 7B1.4.  "[T]his table is an 'advisory' policy statement rather than a formal guideline." United States v. Tapia-Escalera, 356 F.3d 181, 182 (1st Cir. 2004) (quoting U.S.S.G. ch. 7, pt. A, intro. cmt. 3).  The lower court must "consider" that policy statement.  United States v. Daoust, 888 F.3d 571, 576 (1st Cir. 2018).  And the court here did just that.  But the court was not bound to follow the table's recommendation.  See, e.g., United States v. Hernández-Ferrer, 599 F.3d 63, 66 (1st Cir. 2010); Tapia-Escalera, 356 F.3d at 182; United States v. O'Neil, 11 F.3d 292, 301 n.11 (1st Cir. 1993). So the court's treatment of § 7B1.4's recommended sentence does not come anywhere close to plain error.

*Adequacy of the Explanation*

We train our sights then on Tanco-Pizarro's claim that the district court offered no credible explanation to justify imposing a 60-month sentence that exceeded the top of the applicable advisory-sentencing range (12 months) by a factor of

- 18 -

five — *i.e.*, a 500% upward variance. Compounding matters, he writes, "the district court knew [he] was being prosecuted in a parallel case for the criminal conduct that was the basis of revocation." Once again, though, he cannot show plain error.

True, a court must adequately explain "in open court" why it chose a particular sentence. 18 U.S.C. § 3553(c). And that burden certainly increases the more the court drifts away from the advisory-sentencing range. United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016). But "a variant sentence" is often "'based on a complex of factors whose interplay and precise weight cannot . . . be precisely described.'" United States v. Matos-de-Jesús, 856 F.3d 174, 179 (1st Cir. 2017) (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)). Such is the case here. So the court's explanation did not have to be detailed to the point of obsession — all the court had to do was "identif[y] the primary reasons underpinning its decision." Id.

By our lights, the court met its burden, offering a coherent justification for the 60-month sentence. The court discussed each violation, for example — remember, per the court, Tanco-Pizarro violated not one, but two supervised-release conditions: failing to report for months on end and committing the crime of possessing firearms as a felon. And the court walked through the key factors that drove its decision, including the

- 19 -

need to protect the public from, and to deter further criminal activity by, an offender who got hit with a felon-in-possession charge while on supervised release for an earlier gun-related offense. All of this led the court to conclude that Tanco-Pizarro had shown a history of not following the criminal law or his conditions of supervised release.[6]

As for Tanco-Pizarro's suggestion that the court should have gone easier on him because it knew he "would be punished again for the same conduct in the parallel criminal prosecution," the revocation sentence is the only sentence that punished him for the violations, and implicit in the court's analysis is its judgment that he should get serious prison time for those flagrant violations. Also, he cites no authority limiting the court's ability to give him the statutory maximum even though he faced punishment in the "parallel criminal" case. Perhaps that is because we have clear authority cutting against his theory — United States v. Coombs, 857 F.3d 439, 451 (1st Cir. 2017). Coombs contains two holdings relevant here. The first is that when a supervised releasee "transgresses the criminal law as well as the conditions of supervision, there is no legal impediment in

---

[6] Montero-Montero — on which Tanco-Pizarro heavily relies — is easily distinguishable from today's case because there, unlike here, the "sentencing transcript" revealed "nothing that remotely resemble[d] an adequate explanation of the sharply variant sentence." See 817 F.3d at 37.

sentencing [him] both as a criminal and as a supervised release violator" — if the rule were "otherwise," he "would effectively escape meaningful punishment for violating his supervised release conditions." Id. The second is that "there is no legal impediment to imposing the sentences to run consecutively" — actually, a guideline provision "envision[s] precisely such a scenario," what with it saying that "'[a]ny term of imprisonment imposed'" after "'the revocation of . . . supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving,'" regardless of "'whether . . . the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of . . . supervised release.'" Id. (quoting U.S.S.G. § 7B1.3(f)).

We thus have no trouble concluding that the court's explanation, brief as it is, suffices to withstand plain-error review.[7] See Alejandro-Rosado, 878 F.3d at 440.

---

[7] One final matter before we leave the explanation issue. Tanco-Pizarro says that probation "did not prepare a Revocation Report or an Amended Presentence Report," and "[t]he district court did not prepare a written Statement of Reasons for the revocation sentence." But he develops no legal argument directed to these points and so waived any argument that he might have had. See, e.g., United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (describing the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

- 21 -

## Substantive Reasonableness

Even less need be said about Tanco-Pizarro's substantive-reasonableness challenge.  Made only in passing, the entirety of his argument — which basically recycles something we just rejected — is this:  "[t]he sentence in this case, 500% upward variance where the court [knew] the defendant [would] be punished again for the same conduct in the parallel criminal prosecution, is not defensible; nor is the explanation offered by the court plausible."  Despite débuting this claim here, we will "assume, favorably to [him], that the abuse-of-discretion standard of review applies."  See Márquez-García, 862 F.3d at 147 (noting that "[t]he standard of review for [unpreserved] claims of substantive unreasonableness is 'somewhat blurred,'" and choosing "to skirt this murky area" by "assum[ing]" for argument's sake that the more favorable "abuse-of-discretion" test controls (quoting United States v. Ruiz-Huertas, 792 F.3d 223, 228 (1st Cir. 2015))).

As Tanco-Pizarro alluded to in his brief, a sentence is substantively reasonable if the court's reasoning is plausible and the result is defensible.  See, e.g., United States v. Rodríguez-Adorno, 852 F.3d 168, 177 (1st Cir. 2017).  Know too that because it is an inherently flexible concept, "[r]easonableness" in this context "entails a range of potential sentences," rather than "a single" definite outcome.  United States v. Dixon, 449 F.3d 194, 204 (1st Cir. 2006).

With that in mind, we cut directly to the chase. Nothing in Tanco-Pizarro's arguments convinces us the sentence is implausible or indefensible. As we were at pains to show in the last section, the court — after considering the proper sentencing factors — plainly justified the incarcerative term. And while stiff, the sentence's length — 60 months, well above the nonbinding range of 6 to 12 months, and right at the statutory maximum — is defensible. After all, even a stiff sentence may come "within the universe of reasonable sentences." United States v. de Jesús, 831 F.3d 39, 43 (1st Cir. 2016). Yes, "the greater the extent of a variance, 'the more compelling the sentencing court's justification must be.'" Id. (quoting United States v. Del Valle-Rodríguez, 761 F.3d 171, 177 (1st Cir. 2014)). But, for the reasons recorded above, the court's explanation satisfies that metric, reflecting (as it does) the realities of Tanco-Pizarro's situation. And his final salvo — that his sentence is substantively infirm because the court knew he would be "punished again for the same conduct in the parallel criminal prosecution" — also misfires, thanks to Coombs. See 857 F.3d at 451.

## Conclusion

Our work over, we *affirm* Tanco-Pizarro's 60-month revocation sentence.

**-Concurring Opinion Follows-**

**THOMPSON, <u>Circuit Judge</u>, concurring**. I agree (obviously) with everything the court has said but write separately (and briefly) only to make one additional point.

The law books are full of our opinions saying that when a defendant raises a substantive-reasonableness challenge for the first time here, "it is arguable whether our review is for abuse of discretion or for plain error" — though we assume favorably to the defendant that the abuse-of-discretion standard holds sway. <u>See, e.g.</u>, <u>United States</u> v. <u>Demers</u>, 842 F.3d 8, 14 (1st Cir. 2016). Now, when it comes to alleged trial errors, a defendant "who deems himself aggrieved . . . ordinarily must object then and there, or forfeit any right to complain at a later time" — the reason being that "calling a looming error to the trial court's attention affords an opportunity to correct the problem before irreparable harm occurs," and if the defendant holds his tongue below, he must run the gauntlet of plain-error review. <u>United States</u> v. <u>Taylor</u>, 54 F.3d 967, 972 (1st Cir. 1995). But since we are dealing here with a supposed sentencing error, I wonder whether and how Tanco-Pizarro could have preserved a substantive-reasonableness argument. I say this because a sentence is generally deemed imposed when the judge announces it in open court. <u>See</u> Fed. R. Crim. P. 35(c). So — as of now — it seems to me that once the court imposed sentence, Tanco-Pizarro could only request a modification through a Rule-35 motion (see footnote 1 of the lead

- 24 -

opinion), even if he had voiced an objection at that point in the hearing.

Neither party presses this issue, however.  Consequently there is no need to explore the matter today.