# United States Court of Appeals
## For the First Circuit

No. 17-1962

UNITED STATES OF AMERICA,

Appellee,

v.

ANGEL RAFAEL CONTRERAS-DELGADO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron and Selya, Circuit Judges,
and Katzmann,* Judge.

Marie L. Cortés Cortés, was on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana
E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, and Mainon A. Schwartz, Assistant United
States Attorney, on brief for appellee.

January 17, 2019

* Of the United States Court of International Trade, sitting
by designation.

**KATZMANN**, **Judge**. After pleading guilty to a charge of possessing a machine gun in violation of 18 U.S.C. § 922(o), the uncontested presentence report("PSR") placed defendant-appellant Angel Rafael Contreras-Delgado ("Contreras-Delgado") in a federal guideline sentencing range ("GSR") of 24 to 30 months' imprisonment. The district court judge sentenced him to 46 months. Claiming that this variant sentence is procedurally flawed and substantively unreasonable, Contreras-Delgado now appeals. We affirm.

## I.    BACKGROUND.

Because this appeal follows a guilty plea, we draw the facts from the change-of-plea colloquy, the undisputed portions of the PSR, and the transcript of the sentencing hearing. United States v. Arias-Mercedes, 901 F.3d 1, 4 (1st Cir. 2018).    In January 2017, undercover police officers saw a man, later identified as Contreras-Delgado, standing outside one of the apartments in a public housing project in Bayamón, Puerto Rico. Contreras-Delgado looked at the officers, asked "What's going on Man" (translation from Spanish), and lifted his arms, which exposed a black gun with an extended magazine in his waistband.    The officers identified themselves and asked if Contreras-Delgado had a firearms license; he replied that he did not. The officers arrested Contreras and seized the gun.    The gun —- a Glock 9-millimeter ("mm") pistol -— had been modified to fire multiple

rounds with a single pull of the trigger and was fully loaded with a 31-round extended magazine. At the time of arrest, the officers found two more 9-mm magazines next to Contreras-Delgado: another fully loaded 31-round magazine and a 17-round magazine with 15 rounds of ammunition.

Federal agents questioned Contreras-Delgado after reading him his rights. Contreras-Delgado admitted that he sold drugs and had purchased the gun that was in his waistband "for protection." He told the agents he knew the pistol was modified to fire automatically "because he specifically asked for it to be fully auto when he purchased it." The firearm also had an aftermarket barrel installed, was equipped with a high-capacity 31-round magazine, and incorporated a machine gun conversion device designed to make semiautomatic Glock pistols fire automatically. No ownership records for the gun could be found.

Contreras-Delgado was indicted for possessing a machine gun, in violation of 18 U.S.C. § 922(o). He knowingly and voluntarily entered a straight plea of guilty to possessing a machine gun as alleged in the indictment. At the change-of-plea hearing, Contreras-Delgado told the district court of his current treatment for depression, though he remained competent to plead. He also indicated that he understood that sentencing would be in the discretion of the court and could differ from the guidelines and/or the parties' sentencing recommendations. Upon Contreras-

Delgado's motion, the judge issued an order permitting evaluation of him by a clinical psychologist, Dr. Alexandra Ramos ("Dr. Ramos"), in support of mitigation of sentence.

The U.S. Probation Office prepared a PSR[1] that outlined the offense conduct described above. Possession of a machine gun carried a base offense level of 20; the PSR subtracted 3 levels for acceptance of responsibility, yielding a total offense level of 17.

Contreras-Delgado was twenty-two years old when he was arrested for the instant offense. By that time, he had two juvenile adjudications: one for pointing a bladed weapon at four other children and threatening to stab them, and another for stealing from his mother and threatening to kill both her and his grandmother. He had also been arrested as an adult for two counts of distributing a controlled substance, but those charges were dismissed pursuant to Puerto Rico's Speedy Trial Act. None of these events counted for criminal history points under the guidelines. Accordingly, the PSR used a Criminal History Category of I, and calculated Contreras-Delgado's GSR as 24 to 30 months' imprisonment. Under the guidelines, Contreras-Delgado was ineligible for probation. See U.S.S.G. § 5B1.1.

---

[1] All references herein are to the amended PSR, filed on June 23, 2017, which contained some factual updates from the first PSR, filed two weeks prior.

The PSR then set forth at length Contreras-Delgado's personal history and characteristics, including his family history, and his mother's impression of his treatment needs: his "volatile nature" plus "hyperactivity disorder . . . when combined with his drug use, results in violent behavior. If he is under treatment, he can control his impulses." The PSR also included a detailed summary of Contreras-Delgado's mental and emotional health, including a 2012 evaluation by a clinical psychologist and 2017 findings by the Bureau of Prisons Psychology Services.

In its concluding paragraph, the PSR noted that the district court could "consider the following factors to impose a sentence outside the advisory [g]uideline[]s": Contreras-Delgado's history of substance abuse, his juvenile record, the fully loaded weapon and additional magazines he possessed during the instant offense, his admissions that he had sought out a fully automatic firearm and that he sold drugs, and finally, that he was arrested as part of an operation targeting drug point activities in a public housing project.

Contreras-Delgado did not object to any portion of the PSR. He did, however, submit a sentencing memorandum urging the district court to focus on Contreras-Delgado's rehabilitative potential and recommending a non-GSR "alternative sentence," combining incarceration, probation, and supervised release.

At sentencing, Contreras-Delgado sought to present briefly the testimony of Dr. Ramos, the clinical psychologist who evaluated him while he was in jail. The United States ("the government") offered instead to stipulate to the contents of the report prepared by Dr. Ramos and its recommendation that Contreras-Delgado receive substance abuse treatment. The district court approved the stipulations and ruled that there was no need for Dr. Ramos to testify. The district court summarized Dr. Ramos's recommendation -- that Contreras-Delgado "receive substance abuse treatment to address his problems with addiction and to prevent relapses" -- and directed that the whole report be added to the PSR. The district court also instructed that the PSR be modified to include mental health treatment as one of the conditions.

Contreras-Delgado argued that a prolonged sentence of imprisonment would not facilitate his rehabilitation. He particularly "highlight[ed] from the sentencing memo [] the idea that because of [his] age, a prolonged sentence of imprisonment may not actually contribute to his rehabilitation." The district court pointed out that Dr. Ramos's report contradicted that statement: "[Dr.] Ramos says that he is in remission because of his incarceration." Contreras-Delgado disagreed and argued that "it's about all the environmental factors that go into what would help someone rehabilitate." The government agreed that Contreras-Delgado did "do well under a controlled environment," but indicated

that a "controlled environment" could be obtained in prison. The government also explained that other sentencing factors strongly favored a sentence of imprisonment, particularly the serious nature of Contreras-Delgado's offense and his prior offenses involving threats of violence.

The parties agreed that Contreras-Delgado's total offense level was 17. The court then recounted the facts of Contreras-Delgado's juvenile offenses involving threats of violence and noted Contreras-Delgado's 2014 arrest for a controlled substance offense. As the PSR explained, this meant that Contreras-Delgado had no criminal history points. His GSR was thus 24 to 30 months. Contreras-Delgado asked the court to depart or vary downward from imposing a sentence of incarceration and instead impose a combination of incarceration and home confinement. The government, noting that Contreras-Delgado had a machine gun in his waist and had prior contacts with the law, recommended that the court impose a sentence of incarceration within the GSR. The government indicated that the Bureau of Prisons could provide a controlled environment as well as mental health and substance abuse treatment.

Stating that it had considered the facts of Contreras-Delgado's offense as well as the other sentencing factors set forth in 18 U.S.C. § 3553(a), the district court determined that a sentence above the GSR was appropriate. Specifically, the district

court noted Contreras-Delgado's age, employment, and substance abuse history, reiterated the parties' sentencing recommendations, and explained that it had considered Contreras-Delgado's "personal characteristics, as well as the nature of the offense." Contreras-Delgado's machine gun "was loaded with a 31-round high capacity magazine," he had additional high-capacity magazines, he admitted that he requested a fully automatic gun when he purchased it, and he confessed to selling drugs. Those facts, plus Contreras-Delgado's prior violent threats and the fact that he had not reformed despite prior leniency, "move[d] the Court to impart a sentence above the guideline range" to "reflect[] the seriousness of the offense, promote[] respect for the law, protect[] the public from further crimes by Mr. Contreras[-Delgado], and address[] the issues of deterrence and punishment." Accordingly, the court sentenced Contreras-Delgado to 46 months' imprisonment and three years' supervised release.

This appeal ensued.

## II.  DISCUSSION

### A.  Basic Principles.

As we detail below, Contreras-Delgado contends that the 46-month variant incarceration sentence was both procedurally and substantively unreasonable. "We review sentencing decisions imposed under the advisory Guidelines, whether outside or inside the applicable GSR, for reasonableness." United States v.

Pantojas-Cruz, 800 F.3d 54, 58 (1st Cir. 2015) (citing United States v. Turbides-Leonardo, 468 F.3d 34, 40 (1st Cir. 2006)). This review incorporates two components directed at the appraisal of procedural soundness and then substantive reasonableness of the sentence. See Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Cox, 851 F.3d 113, 119-20 (1st Cir. 2017); United States v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2012). Thus, first, we examine whether in arriving at the sentence, the district court committed any procedural errors. United States v. Rossignol, 780 F.3d 475, 477 (1st Cir. 2015); Gallardo-Ortiz, 66 F.3d at 811. Such missteps include "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence — including an explanation for any deviation from the Guidelines range." Gall, 552 U.S. at 51. "We have described our abuse of discretion standard in this context as 'multifaceted,' as we apply clear error review to factual findings, de novo review to interpretations and applications of the guidelines, and abuse of discretion review to judgment calls." United States v. Nieves-Mercado, 847 F.3d 37, 42 (1st Cir. 2017). While this court generally applies "the deferential abuse of discretion standard to preserved challenges to the procedural reasonableness of a sentence, . . . when a defendant fails to

preserve an objection to the procedural reasonableness below [of the sentence but asserts it on appeal], the plain error standard supplants that customary standard of review." United States v. Gierbolini-Rivera, 900 F.3d 7, 12 (1st Cir. 2018); see United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). The plain error standard "is not easy to meet, because it requires error, plainness, prejudice to the defendant and the threat of a miscarriage of justice." United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011) (citing United States v. Olano, 507 U.S. 725, 732-36 (1993)).

If procedural soundness is established, we then proceed to the second phase of our review, assessing the substantive reasonableness of the sentence, "tak[ing] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." United States v. Bermúdez-Meléndez, 827 F.3d 160, 163 (1st Cir. 2016) (alteration in original) (quoting Gall, 552 U.S. at 51). "In determining substantive reasonableness, substantial respect is due to the sentencing court's discretion." Id. This deferential approach recognizes that although "[a] sentencing court is under a mandate to consider a myriad of relevant factors, . . . the weighting of those factors is largely within the court's informed discretion." United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011). For substantive reasonableness, the linchpin is "a plausible sentencing rationale

and a defensible result." United States v. Pol-Flores, 644 F.3d 1, 4-5 (1st Cir. 2011) (quoting United States v. Martin, 520 F.3d 87, 96 (1st Cir. 2008)). Hence, "we limit our review to the question of whether the sentence, in light of the totality of the circumstances, resides within the expansive universe of reasonable sentences." United States v. King, 741 F.3d 305, 308 (1st Cir. 2014). While some circuits have found substantive reasonableness claims preserved despite a lack of objection in the lower court, and thus not reviewed for plain error, see United States v. Hernández-Maldonado, 793 F.3d 223, 227 (1st Cir. 2015), in our circuit the question remains open. See United States v. Rondón-García, 886 F.3d 14, 26 (1st Cir. 2018); United States v. Arsenault, 833 F.3d 24, 29 (1st Cir. 2016).

Even if plain error is not applied, considerable deference must still be given to the district court's judgment. Clogston, 662 F.3d at 593. This "highly deferential . . . standard remains in full force" even if the sentence is outside the applicable GSR. United States v. Vázquez-Martínez, 812 F.3d 18, 26 (1st Cir. 2016) (quoting United States v. Santiago-Rivera, 744 F.3d 229, 234 (1st Cir. 2014)); see also Gallardo-Ortiz, 666 F.3d at 811 ("A dramatic variance . . . cannot unduly influence our review of substantive reasonableness."). Accordingly, even when the district court imposes a variant sentence, this court affords "due deference to the district court's decision that the § 3553(a)

factors, on a whole, justify the extent of the variance." Gall, 552 U.S. at 51.

### B. Procedural Reasonableness.

Contreras-Delgado argues on appeal that the district court abused its discretion in denying his request to present the live testimony of Dr. Ramos, the clinical psychologist who had evaluated him while he was in jail, and that this denial constitutes procedural error because he was precluded from presenting "information relevant to recidivism and rehabilitation . . . as part of § 3553(a)'s sentencing factors." He also asserts that the court "overstated" the evidence of his prior violent threats. Contreras-Delgado argues generally that the court did not appropriately balance the § 3553(a) factors, thereby violating the parsimony principle – the statutory directive that sentences should be no higher than necessary to achieve the statutory goals of sentencing. Specifically, Contreras-Delgado complains that the court did not mention Contreras-Delgado's mental characteristics, such as depression and attention deficit hyperactivity disorder.

### 1.

Contreras-Delgado contends that the district court abused its discretion when it did not allow the testimony of Dr. Ramos at the sentencing hearing and further failed to consider § 3353(a) sentencing factors. The government counters that Contreras-Delgado did not object to this denial and, thus, the

appropriate standard of review is for plain error. It is well established that articulating an objection is required in order to preserve the most generous standard for a defendant. This not only protects the interests of the defendant but also provides the government with an opportunity to respond. Proper objection also furthers the interests of judicial economy in that it assists judicial decision-making. To be sure, the record would have been cleaner if the talismanic "I object" formulation had been uttered. At the same time, a review of the record leaves little doubt that counsel sought to present the live testimony of the witness and persisted in explaining why it was necessary even after it had been denied. In any event, whether the standard of review be abuse of discretion or plain error, we conclude that Contreras-Delgado's claim of procedural error cannot succeed.

First, we note that while a defendant enjoys a right to due process at sentencing, United States v. Stile, 845 F.3d 425, 430 (1st Cir. 2017), and the right "to speak or present any information to mitigate the sentence," Fed. R. Crim. P. 32(i)(4)(A)(ii); see also Irizarry v. United States, 553 U.S. 708, 715 (2008), "a defendant has no right to insist on calling other witnesses on his behalf." Stile, 845 F.3d at 430. See United States v. Cruzado-Laureano, 527 F.3d 231, 238 (1st Cir. 2008); United States v. Heller, 797 F.2d 41, 43 (1st Cir. 1986). "The rule only requires the court to allow the defendant and his

attorney to speak." Cruzado-Laureano, 527 F.3d at 238 (citing Fed. R. Crim. P. 32(i)(4)(A)(i), (ii); United States v. Rodriguez, 336 F.3d 67, 70 (1st Cir. 2003)).

Here, the district court not only reviewed Dr. Ramos's report from the bench, but it summarized her recommendations and, as reflected in the district court's correction of counsel's interpretation, demonstrated command of its contents. Moreover, Dr. Ramos's entire report was included in the PSR, where, as the district court noted, it could guide the Bureau of Prisons and Probation as they determined appropriate treatment. Further, Contreras-Delgado's counsel fully explained to the court his view that Dr. Ramos's report supported a mitigation of the sentence below the GSR. In sum, under any standard of review, Contreras-Delgado's claim that substitution of Dr. Ramos's report in lieu of testimony constituted procedural error is not meritorious.[2]

**2.**

Contrary to Contreras-Delgado's assertion, the district court properly considered the § 3553(a) sentencing factors,

---

[2] We note that the government also argues that Contreras-Delgado consented to the substitution of Dr. Ramos's report in lieu of her live testimony, and that this consent constituted waiver, instead of forfeiture, such that he may not revive his waived argument on appeal. See generally United States v. Delgado-Sánchez, 849 F.3d 1, 6-7 (1st Cir. 2017) (reviewing waiver and forfeiture standards). The record is open to a different interpretation. In any event, we need not resolve the issue because, as we have indicated, Contreras-Delgado's claim fails. Id. at 7.

including relevant mitigating and aggravating factors; its weighing of those factors was well within its discretion. While a sentencing court must consider all the incorporated § 3553(a) factors, it "need not verbalize its evaluation of each and every [§] 3553(a) factor." United States v. Reyes-Rivera, 812 F.3d 79, 89 (1st Cir. 2016). Moreover, it "is not required to address the § 3553(a) factors one by one, in some sort of rote incantation when explicating its sentencing decision, nor must the court afford each of the § 3553(a) factors equal prominence." United States v. Sosa-González, 900 F.3d 1, 5 (1st Cir. 2018) (quoting United States v. Vázquez-Vázquez, 852 F.3d 62, 66 (1st Cir. 2017)). Here, the court expressly stated that it had considered the § 3553(a) sentencing factors. That statement is "entitled to significant weight." United States v. Caballero-Vázquez, 896 F.3d 115, 120 (1st Cir. 2018) (quoting Santiago-Rivera, 744 F.3d at 233). It also implicitly acknowledges awareness of and accordance with the parsimony principle. Turbides-Leonardo, 468 F.3d at 41 ("[T]he sentencing court in this case acknowledged its awareness of the parsimony principle during the disposition hearing, stating that it had taken [§] 3553(a) into account in arriving at the 48-month sentence. On these facts, no more is exigible.").

Moreover, the district court discussed the relevant sentencing factors on the record. First, the district court expressly considered Contreras-Delgado's history and

- 15 -

characteristics, including his age, employment, and substance abuse history. Then, the court specified the facts it found warranted a sentence above the applicable GSR: Contreras-Delgado's automatic weapon was loaded with a 31-round high-capacity magazine and 31 rounds of ammunition; Contreras-Delgado had a second 31-round high-capacity magazine, also fully loaded with 9-mm ammunition for the automatic weapon; Contreras-Delgado had a third high-capacity magazine, this one with 15 rounds of 9-mm ammunition; Contreras-Delgado not only knew the weapon was fully automatic, but specifically requested that modification when he purchased it; Contreras-Delgado had previously benefited from leniency and the "probation and programs offered by the Commonwealth of Puerto Rico and the Court of Juvenile Affairs"; Contreras-Delgado admitted selling drugs and had in fact been arrested -- though not convicted -- for possession with intent to distribute marijuana and cocaine; and Contreras-Delgado's criminal history included "threatening to kill children with a knife and threatening to kill his mother." Contreras-Delgado's suggestion that the district court somehow erred by characterizing these violent threats as violent behavior is unavailing. See, e.g., United States v. Harden, 866 F.3d 768, 774 (7th Cir. 2017) (noting that a statutory "definition of violent offense comports with a common-sense understanding of violent conduct as the use or threat of physical force against another and

is relevant as a guidepost as to a common definition of 'violence.'" (emphasis added)).

These are all statutorily authorized sentencing considerations; each of these facts relates to the nature and circumstances of the offense (especially those not already accounted for by the guidelines) or to Contreras-Delgado's history and characteristics. See 18 U.S.C. § 3553(a)(1). Basing Contreras-Delgado's sentences on these factors cannot constitute procedural error, nor will this court "disturb a well-reasoned decision" -- including the one here -- "to give greater weight to particular sentencing factors over others." United States v. Santini-Santiago, 846 F.3d 487, 492 (1st Cir. 2017) (quoting United States v. Gibbons, 553 F.3d 40, 47 (1st Cir. 2009)).

The district court expressly found that a sentence above the GSR was further supported by the statutory sentencing considerations of: "reflect[ing] the seriousness of the offense, promot[ing] respect for the law, protect[ing] the public from further crimes by Mr. Contreras[-Delgado], and address[ing] the issues of deterrence and punishment." That finding must be afforded a high level of deference on appeal, regardless of the standard of review applied. See Vázquez-Martínez, 812 F.3d at 26.

Contreras-Delgado's claim "that the court erred by relying on [negative factors] excessively" thus simply "amounts to a disagreement with the district court's weighing of the different

sentencing factors." United States v. Cruz-Vázquez, 841 F.3d 546, 550 (1st Cir. 2016). That the district court -- after careful consideration of the statutory factors and explanation of its reasoning -- weighed the factors differently than Contreras-Delgado is not error. United States v. Carrasco-de-Jesus, 589 F.3d 22, 29 (1st Cir. 2009).

All the potentially mitigating factors Contreras-Delgado identifies on appeal were discussed in the PSR, in Contreras-Delgado's sentencing memorandum, and/or at sentencing. "The potentially mitigating factors [the defendant] identifies on appeal were thoroughly discussed in the presentence report; that the district court did not explicitly mention them during the sentencing hearing suggests they were unconvincing, not ignored." United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012).

Moreover, although the district court did not recite Contreras-Delgado's mental health history, it did review Dr. Ramos's report and direct that it be added to the PSR, which signals consideration of its contents. "The record . . . supports the conclusion that the District Court simply focused on other considerations that it implicitly deemed more important, including the defendant's history of violent behavior." United States v. Occhiuto, 784 F.3d 862, 869 (1st Cir. 2015). The fact that Contreras-Delgado would have preferred that greater weight be given to his psychological issues rather than to the seriousness

of his criminal behavior is not a reason to vacate his sentence. See, e.g., United States v. Arroyo-Maldonado, 791 F.3d 193, 201 (1st Cir. 2015) (finding no error where the defendant sought to substitute his judgment for that of the sentencing court).

Regarding Contreras-Delgado's prior behavior, the district court did include a factually accurate comment that Contreras-Delgado had been arrested, but not convicted, of possessing drugs with intent to distribute them at the state level. Contreras-Delgado separately admitted that he "sells drugs . . . to make a living," so it is undisputed that he committed drug trafficking offenses not reflected in his criminal history score. Thus, the district court did not run afoul of this court's admonition not to use mere arrests to "infer unlawful behavior unless there is proof by a preponderance of the evidence of the conduct" those charges allege. Rondón-García, 886 F.3d at 25) (citing United States v. Cortés-Medina, 819 F.3d 566, 570 (1st Cir. 2016)). The district court's use of the phrase "[a]s usual" to describe the dismissal of those drug-distribution charges did not render Contreras-Delgado's underrepresented criminal history an impermissible consideration. See 18 U.S.C. § 3553.

Accordingly, Contreras-Delgado's claim fails under any standard of review. Even under the more defendant-friendly abuse of discretion standard, Contreras-Delgado's arguments fail because his sentence was properly based on permissible § 3553(a) sentencing

factors, and the allegedly mitigating factors were considered by the district court.  See Arroyo-Maldonado, 791 F.3d at 201.[3]

### C.    Substantive Reasonableness.

An inquiry into the substantive reasonableness of a sentence must "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range." Gall, 552 U.S. at 51.  "The hallmarks of a substantively reasonable sentence are 'a plausible sentencing rationale and a defensible result.'" United States v. Zapata-Vázquez, 778 F.3d 21, 24 (1st Cir. 2015) (quoting Martin, 520 F.3d at 96).  Under the totality of the circumstances here, Contreras-Delgado's 46-month sentence was substantively reasonable.

As has been noted, it is clear from the record that the district court sufficiently considered the relevant § 3553 sentencing factors.  See supra pp. 15-20.  The court assessed the dangerous nature and circumstances of the offense of conviction, including the fact that the machine gun possession offense also involved a substantial amount of ammunition and multiple high-capacity magazines, heightening the risk posed to the public.

---

[3] Because Contreras-Delgado's improper-weight arguments fail regardless of the standard of review, it is immaterial whether they are characterized as procedural or substantive arguments. Cf. Caballero-Vázquez, 896 F.3d at 120 n.1 (noting that First Circuit "precedent is less-than-clear as to whether a sentencing court's weighing of mitigating factors implicates procedural or substantive reasonableness").

Moreover, Contreras-Delgado admitted committing other crimes (specifically, selling drugs) for which he had never been punished, despite having been previously arrested. That, as well as the fact that Contreras-Delgado's prior juvenile convictions for threats of violence resulted in no criminal history points, support the conclusion that the district court was well within its discretion to believe that the GSR underrepresented Contreras-Delgado's criminal history. "[A] district court may vary a sentence upward in an effort to reflect past leniency." United States v. Santiago-González, 825 F.3d 41, 49 (1st Cir. 2016) (citing United States v. Flores-Machicote, 706 F.3d 16, 21 (1st Cir. 2013)). Indeed, the district court noted that despite his prior brushes with the law, Contreras-Delgado had "benefited from probation and programs" instead of imprisonment. The court thus acted within the bounds of its discretion when it determined that Contreras-Delgado's offense —- when viewed in light of his history —- warranted a variant sentence. See United States v. Romero-Galindez, 782 F.3d 63, 71-72 (1st Cir. 2015). "[D]eviation[s] from the Guidelines 'should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender.'" Id. (quoting Martin, 520 F.3d at 91)). Here, the district court rooted its variant sentence in both.

We further note that the length of the sentence does not make it per se unreasonable. "The district court evaluated the

factors provided under 18 U.S.C. § 3553(a) and determined that an above-guidelines sentence was appropriate." Santini-Santiago, 846 F.3d at 492 (upholding a district court's 18-month variance above an applicable GSR of 12 to 18 months, partly due to the weight the district court placed on the seriousness of the offense). Contreras-Delgado's sentence falls well within the "expansive universe of substantively reasonable sentences." United States v. Matos-de-Jesús, 856 F.3d 174, 180 (1st Cir. 2017) (upholding a sentence 15 months longer than the top end of the GSR). "Decisions like these are within the sound discretion of sentencing courts, and [this court] 'will not disturb a well-reasoned decision to give greater weight to particular sentencing factors over others.'" Santini-Santiago, 846 F.3d at 492 (quoting Gibbons, 553 F.3d at 47).

In this case, Contreras-Delgado faced a statutory maximum sentence of up to ten years of imprisonment. See 18 U.S.C. § 922(o). His actual sentence of less than four years is not only defensibly within "the expansive boundaries of [the] universe" of reasonable sentences, but also well within the statutory bounds of the district court's discretion, and represents a fraction of Contreras-Delgado's exposure. Martin, 520 F.3d at 92; see also United States v. Díaz-Bermúdez, 778 F.3d 309, 313-14 (1st Cir. 2015) (comparing sentence to statutory maximum, and collecting cases upholding variances several years above the guidelines).

"[A]n increased sentence is necessarily a judgment call and, within wide limits, deference is due to the trier's on-the-spot perceptions."  Arroyo-Maldonado, 791 F.3d at 198 (quoting United States v. Vargas-Dávila, 649 F.3d 129, 131 (1st Cir. 2011)).  We thus defer to the district court's reasoned decision that, under the circumstances, Contreras-Delgado's behavior warranted a 46-month sentence.

## III.   CONCLUSION

In sum, a sentence should be left intact so long as it is procedurally sound and there is "a plausible sentencing rationale and a defensible result."  Martin, 520 F.3d at 96; Gall, 552 U.S. at 49-50 (requiring individualized consideration and adequate explanation for variances).  The district court provided individualized assessments of Contreras-Delgado's conduct as well as the other § 3553 factors, and reasonably explained the basis for the sentence imposed.

We conclude that Contreras-Delgado's sentence was procedurally and substantively reasonable.

The sentence is **affirmed**.