# United States Court of Appeals
## For the First Circuit

Nos. 17-1761, 17-1762

UNITED STATES OF AMERICA,

Appellee,

v.

ROBERTO CRUZ-OLAVARRIA,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella, Lipez, and Kayatta,
Circuit Judges.

Alejandra Bird López on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney,
Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief,
Appellate Division, and Thomas F. Klumper, Assistant United States
Attorney, Senior Appellate Counsel, on brief for appellee.

March 27, 2019

**LIPEZ, Circuit Judge**. Roberto Cruz-Olavarria challenges two separate terms of imprisonment: his 120-month sentence for possessing a machine gun, and a consecutive 24-month sentence for violating conditions of supervised release related to an earlier conviction for possessing a machine gun. Because an appellate waiver provision in Cruz-Olavarria's plea agreement bars us from reviewing the sentence imposed on the new charges, we address the merits only of his revocation sentence. As to that sentence, we find no error and therefore affirm.

## I.

In June 2012, Cruz-Olavarria pled guilty to unlawfully possessing a firearm that was modified to shoot automatically -- i.e., a machine gun, as defined by federal law. See 18 U.S.C. § 922(o) (criminalizing unlawful possession of a machine gun); 26 U.S.C. § 5845(b) (defining "machinegun"). He received a sentence of 36 months' imprisonment and three years of supervised release. More than halfway through his supervised release term, in September 2016, Puerto Rico police officers assigned to the San Juan Drug Unit arrested Cruz-Olavarria at a housing project after seeing him drop a plastic bag and finding in his waistband a modified pistol that federal law classifies as a machine gun. A fully loaded, fifteen-round capacity magazine was attached to the pistol. In his back pocket, Cruz-Olavarria had two thirteen-round capacity magazines, one fully loaded and one with twelve rounds.

- 2 -

Officers also recovered the plastic bag, which contained twenty-three hand-rolled marijuana cigarettes.[1]

In a five-count superseding indictment issued in October 2016, Cruz-Olavarria was charged with (1) being a felon-in-possession of a firearm and ammunition (Count One), (2) illegal possession of a machine gun (Count Two), (3) possession with intent to distribute drugs (Count Three), and (4) possession of firearms in furtherance of a drug trafficking crime (Counts Four and Five). Cruz-Olavarria agreed to plead guilty to Counts One and Two, and the government agreed in return to dismiss the remaining counts.

The Sentence Recommendation provision of the plea agreement stated:

> After due consideration of the relevant factors enumerated in 18 U.S.C. §3553(a) and after considering that the parties have agreed that Counts Three through Five will be dismissed ([one of] which carried a minimum sentence of 30 years of imprisonment), the parties agree that as to Counts One and Two, the defendant will request a sentence of no less than ninety-six (96) months and the United States may request a sentence of up to one hundred twenty (120) months of imprisonment.

---

[1] The relevant facts in this case are largely undisputed, although Cruz-Olavarria questions on appeal the statement -- drawn from the summary of offense conduct in his Presentence Investigation Report ("PSR") -- that he had been in possession of the plastic bag retrieved by the officers. However, Cruz-Olavarria did not object to the PSR's account, and we therefore rely on it in setting out the background. See United States v. De la Cruz-Gutiérrez, 881 F.3d 221, 223 (1st Cir. 2018).

The plea agreement also contained a Waiver of Appeal provision: "The defendant knowingly and voluntarily waives the right to appeal the judgment and sentence in this case, provided that the Defendant is sentenced in accordance with the terms and conditions set forth in the Sentence Recommendation provisions of this Plea Agreement."

The district court sentenced Cruz-Olavarria to 120 months' imprisonment -- the statutory maximum -- for the new criminal conduct.[2]  The Guidelines range for those crimes, based on his acceptance of responsibility and Criminal History Category ("CHC") of III, was 30 to 37 months' imprisonment.  In explaining the sentence, the court emphasized the special danger posed by machine guns, referenced Cruz-Olavarria's possession of marijuana, and noted that "he possessed the machine gun in further[ance] of a drug trafficking crime."  The court observed that it would have imposed a sentence greater than 120 months but for the statutory limit, having concluded that the statutory maximum was insufficient to reflect, inter alia, the seriousness of the offense and the need to deter and punish Cruz-Olavarria.

Immediately after Cruz-Olavarria's sentencing on the new criminal charges, in the same proceeding, the district court

---

[2] At the government's request, pursuant to the plea agreement, the court dismissed Counts Three, Four, and Five of the superseding indictment.

separately considered the revocation sentence.[3]  Because Cruz-Olavarria's violation of his supervised release conditions included possession of a machine gun, the violation was classified as Grade A, the most serious type.  See U.S.S.G. § 7B1.1(a); United States v. Tanco-Pizarro, 892 F.3d 472, 475 (1st Cir. 2018) (describing the three violation grades).  His Guidelines range (based on his CHC of I) was therefore 12 to 18 months' imprisonment, see U.S.S.G. § 7B1.4(a),[4] and he was subject to a statutory maximum term of two years, see 18 U.S.C. § 3583(e)(3).

Defense counsel urged the court to run the revocation sentence concurrently with the sentence for the new crimes.  She emphasized that Cruz-Olavarria had "complied with most of his supervision conditions," and she further noted that his difficult childhood and learning disabilities had limited his education and employment opportunities.  The government requested "a guideline

---

[3] The district court is authorized by statute to impose a term of imprisonment upon revocation of a term of supervised release. See 18 U.S.C. § 3583(e)(3).  When doing so, the court is directed to consider some, but not all, of the sentencing factors listed in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the defendant's history and characteristics, and the need to deter future crime and protect the public.  Id.; see also, e.g., United States v. Soto-Soto, 855 F.3d 445, 450 (1st Cir. 2017).

[4] Although Cruz-Olavarria's CHC for the 2016 crimes was III, the CHC of I for the supervised release violation was based on "the category determined at the time the defendant originally was sentenced to the term of supervision."  U.S.S.G. § 7B1.4 cmt. n.1.

sentence . . . to run consecutively" and suggested 12 months as "adequate" for "the breach of trust."

The court rejected both recommendations and again varied from the Guidelines to impose the statutory maximum 24-month sentence to run consecutively to the just-imposed 120-month term. The court observed, inter alia, that Cruz-Olavarria "has shown that he is unable to comply with the law," "demonstrates a blunt disregard for the conditions imposed by the [c]ourt and has no concern for public safety." The court referenced the sentencing factors set forth in 18 U.S.C. § 3553(a) and stated that a sentence at the statutory maximum was appropriate "[t]o reflect the seriousness of the offense, promote respect for law, provide just punishment for the offense, . . . afford adequate deterrence[,] and to protect the public from further crimes" by Cruz-Olavarria.

On appeal, Cruz-Olavarria contests both sentences, arguing that he is entitled to resentencing because the district court failed to adequately support either upward variance from the Guidelines.

## II.

### A. Waiver of Appeal

In challenging his 120-month sentence for the crimes charged in the 2016 indictment, Cruz-Olavarria confronts the threshold barrier of the waiver of appeal in his plea agreement. He maintains that the waiver does not apply because he acquiesced

only to a term of 96 months.  He points out that the plea agreement did not contain a joint recommendation accepted by both parties, and he asserts that the waiver provision "in no way represents a concession by the defense that the 120 month sentence that the government reserved the right to advocate [for] . . . would be reasonable or acceptable."  This attempt to avoid the waiver is unavailing.

Under First Circuit precedent, a sentencing recommendation provision such as the one in Cruz-Olavarria's plea agreement establishes a range for an appellate waiver that incorporates both parties' proposals.  See, e.g., United States v. Morales-Arroyo, 854 F.3d 118, 119-20 (1st Cir. 2017) (noting defendant's recommendation of 96 months and government's recommendation of 144 months, and observing that defendant "waived his right to appeal as long as he received a sentence between 96 and 144 months"); United States v. Betancourt-Pérez, 833 F.3d 18, 22 (1st Cir. 2016) (referencing "the 60-to-120-month range" where plea agreement permitted defendant to request 60-month sentence and government to request up to 120 months).  Employing that approach, the sentencing provision in Cruz-Olavarria's plea agreement created a recommended range of 96 to 120 months' imprisonment, and his sentence of 120 months thus falls within the scope of the waiver.  We therefore dismiss the portion of

Cruz-Olavarria's appeal challenging his sentence for the 2016 crimes.

## B. Revocation Sentence

Cruz-Olavarria asserts that his variant sentence for violating his conditions of supervised release is unlawful because the district court failed to identify how his circumstances "differ[ed] from the ordinary situation covered by the guidelines calculation." United States v. Zapete-Garcia, 447 F.3d 57, 60 (1st Cir. 2006). Although a complaint about the adequacy of the court's explanation for a variance is often construed as a claim of procedural unreasonableness, see Gall v. United States, 552 U.S. 38, 51 (2007); United States v. Contreras-Delgado, 913 F.3d 232, 238 (1st Cir. 2019), Cruz-Olavarria frames his challenge in substantive terms. In effect, he argues that the "large variance from the guidelines range" is unjustifiable and, hence, substantively unreasonable. Accordingly, we follow his lead and focus solely on the substantive issue.

In evaluating the substantive reasonableness of a sentence, "we proceed under the abuse of discretion rubric, taking account of the totality of the circumstances," United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015), "including the extent of any variance from the Guidelines range," Contreras-Delgado, 913 F.3d at 239 (quoting United States v. Bermúdez-Meléndez, 827 F.3d 160, 163 (1st Cir. 2016)); see also

- 8 -

id. (noting that, "[i]n determining substantive reasonableness, substantial respect is due to the sentencing court's discretion" (quoting Bermúdez-Meléndez, 827 F.3d at 163)).[5]  The central inquiry is whether the sentence "reflect[s] both a plausible sentencing rationale and a defensible result."  United States v. Nuñez, 840 F.3d 1, 7 (1st Cir. 2016).  Both criteria are met here.

The district court did not expound at length on its reasons for deviating from the Guidelines during the revocation portion of the sentencing hearing.  Nonetheless, its explanation in context was more than sufficient to satisfy the plausibility requirement.  Only minutes earlier, in sentencing Cruz-Olavarria for the new criminal conduct, the court had emphasized the severity of the new crimes -- which also constituted the violations of supervised release.  The court not only made clear its view that machine guns are distinctively dangerous,[6] but it also highlighted

_____

[5] We bypass the government's contention that Cruz-Olavarria's challenge to his sentence deserves only plain error review.  The proper standard of review for unpreserved substantive reasonableness claims remains an open question in our circuit, see Contreras-Delgado, 913 F.3d at 239, and the outcome here does not depend on the standard.

[6] The district court read aloud the following language from a Ninth Circuit case, United States v. Henry:

> A modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds. Short of bombs, missiles, and biochemical agents, we can conceive of few weapons that are more dangerous than machine guns.

that the new crimes included unlawful possession of a machine gun -- i.e., the same crime for which Cruz-Olavarria was serving the term of supervised release.  See, e.g., Tanco-Pizarro, 892 F.3d at 482 (affirming 500% upwardly variant revocation sentence where, inter alia, defendant was charged as a felon in possession "while on supervised release for an earlier gun-related offense").  The court's comments about Cruz-Olavarria's repetitive dangerous conduct carried over to the court's explanation for finding that the Guidelines range of 12 to 18 months did not fully account for the seriousness of his supervised release violations.

In addition, although the drug-related counts were dropped as part of the plea deal, the district court could properly

---

> . . . Outside of a few government-related uses, machine guns largely exist on the black market.
>
> In short, machine guns are highly "dangerous and unusual weapons" that are not "typically possessed by law-abiding citizens for lawful purposes."

688 F.3d 637, 640 (9th Cir. 2012) (quoting Dist. of Columbia v. Heller, 554 U.S. 570, 625, 627 (2008)) (other citation omitted). All of the firearms and devices triggering a Grade A supervised release violation under the Guidelines are considered "inherently dangerous."  United States v. Bishop, 453 F.3d 30, 31 (1st Cir. 2006) (quoting U.S.S.G. supp. app. C, amend. 674, at 134 (2004)); see U.S.S.G. § 7B1.1(a).  However, the district court could reasonably view machine guns as more problematic than other, non-automatic weapons covered by the same Guidelines provision.  See 26 U.S.C. § 5845(a) (including among such firearms short-barreled shotguns and rifles, and silencers).

consider the unchallenged facts surrounding Cruz-Olavarria's arrest contained in the Presentence Investigation Report ("PSR"). See United States v. Severino-Pacheco, 911 F.3d 14, 20 (1st Cir. 2018) (noting that, absent objections from the defendant, "a PSR bears sufficient indicia of reliability to permit the district court to rely on it at sentencing" (quoting United States v. Cyr, 337 F.3d 96, 100 (1st Cir. 2003))). Cruz-Olavarria's possession of drugs also was cited as an additional supervised release violation in the Probation Office's motion seeking an arrest warrant.

We have observed that a court's reasons for imposing a variant sentence "should typically be rooted either in the nature and circumstances of the offense or the characteristics of the offender." United States v. Fuentes-Echevarria, 856 F.3d 22, 26 (1st Cir. 2017) (quoting United States v. Flores-Machicote, 706 F.3d 16, 21 (1st Cir. 2013)). In this case, the district court relied on both: the highly dangerous, repeated possession of a machine gun and Cruz-Olavarria's seeming lack of concern for public safety.[7] Given those factors, the variant sentence imposed -- six

_____

[7] Although the district court did not expressly link its concerns about machine guns and Cruz-Olavarria's disregard for public safety to the prevalence of firearms and violent crime in Puerto Rico, Cruz-Olavarria's PSR noted that the court "may consider Puerto Rico's high firearms and violent crime rate to impose the sentence." See, e.g., United States v. Hernández-Ramos, 906 F.3d 213, 214 (1st Cir. 2018) (noting that "Puerto Rico's continuing experience with gun violence" is "a permissible

- 11 -

months above the 18-month high end of the Guidelines range -- was not "outside the 'expansive boundaries' of the entire range of reasonable sentences." United States v. Vargas-Dávila, 649 F.3d 129, 130 (1st Cir. 2011) (quoting United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008)); see Contreras-Delgado, 913 F.3d at 239 ("[E]ven when the district court imposes a variant sentence, this court affords 'due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" (quoting Gall, 552 U.S. at 51)).  Put another way, the district court "articulated 'a plausible sentencing rationale' and reached 'a defensible result.'" United States v. Matos-de-Jesús, 856 F.3d 174, 179 (1st Cir. 2017) (quoting Martin, 520 F.3d at 96).  Detecting no abuse of discretion, we affirm the court's imposition of a 24-month revocation term of imprisonment.

For the foregoing reasons, Appeal No. 17-1762 is dismissed.  The sentencing judgment underlying Appeal No. 17-1761 is affirmed.

---

sentencing consideration[,] provided the court does not 'ignore [a defendant's] individual circumstances'" (second alteration in original) (quoting United States v. Laureano-Pérez, 892 F.3d 50, 52 (1st Cir. 2018))).