# United States Court of Appeals
## For the First Circuit

No. 24-1455

UNITED STATES,

Appellee,

v.

BRIAN JERIEL ACEVEDO-RODRÍGUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Gelpí, Howard, and Dunlap,
Circuit Judges.

Robert F. Hennessy, with whom Schnipper Hennessy, PC was on
brief, for appellant.
Juan Carlos Reyes-Ramos, Assistant United States Attorney,
Chief, Appellate Division, with whom W. Stephen Muldrow, United
States Attorney, was on brief, for appellee.

June 16, 2026

**GELPÍ**, **Circuit Judge**. Brian Jeriel Acevedo-Rodríguez ("Acevedo-Rodríguez") pleaded guilty to eleven Hobbs Act robberies and six carjackings, all committed over a three-week span. He also pleaded guilty to one count of discharging a firearm in relation to one of his robbery offenses. He now appeals his 207-month sentence (imposed at resentencing after the firearm conviction was vacated based on an intervening Supreme Court decision), challenging both its procedural and substantive reasonableness. Finding no error, we **affirm** Acevedo-Rodríguez's sentence.

## I. Background[1]

To explain how law enforcement ultimately traced the crime spree to Acevedo-Rodríguez, we begin with the last crime in the series. On December 3, 2018, Acevedo-Rodríguez, two co-defendants, and a juvenile attempted to rob a gas station in San Juan, Puerto Rico. The group arrived in a car they had previously carjacked. Security footage showed one of the adult co-defendants get out of the car, brandish a firearm, and try to force his way into the station. But the attempted robbery quickly unraveled when the co-defendant exchanged gunfire with the

---

[1] Because Acevedo-Rodríguez pleaded guilty, "we draw the facts from the undisputed sections of the presentence investigation report (PSR) and the transcripts of the change-of-plea and sentencing hearings." United States v. Burgos, 133 F.4th 183, 187 n.1 (1st Cir. 2025) (citation modified).

security guard inside, was shot in the leg, and fell to the ground. The juvenile then got out of the car and fired at the guard while the injured man limped and crawled back toward the vehicle. Once both were back inside, the group fled.

Later that night, the injured co-defendant's mother received a phone call telling her that her son had been injured and left at a restaurant near the gas station. She picked him up and called for help. An ambulance took him to the hospital, where he underwent surgery for the gunshot wound. Police arrested him at the hospital two days later, and a grand jury subsequently indicted him for the attempted robbery and related firearm offenses.

The investigation that followed tied Acevedo-Rodríguez to the crime, and to a broader spree: eleven robberies (one attempted) and six carjackings (one attempted) committed from November 14 to December 3, 2018. Then, a twenty-eight count superseding indictment added Acevedo-Rodríguez as a defendant and brought charges for the other robberies, carjackings, and related firearm offenses under § 924(c). Police later arrested Acevedo-Rodríguez.

Facing those charges, Acevedo-Rodríguez entered into a plea agreement, under which he pleaded guilty to all of the charged robbery and carjacking counts, and the government agreed to dismiss all § 924(c) counts except Count Two (which was predicated on the

December 3rd attempted robbery of the gas station). The government also agreed to recommend 120 months of imprisonment on the § 924(c) count, plus a sentence at the low end of the U.S. Sentencing Guidelines ("Guidelines" or "USSG") range on the remaining counts, based on a total offense level of twenty-nine and a criminal history category to be determined by the court. If Acevedo-Rodríguez had a criminal history category of I, that recommendation would yield a total recommended sentence of 207 months' imprisonment: 120 months on Count Two plus 87 months on the remaining counts.

The plea agreement also contained a waiver-of-appeal provision that read:

> The defendant knowingly and voluntarily agrees that, if the imprisonment sentence imposed by the Court is two-hundred and twenty-eight (228) months or less, the defendant waives the right to appeal any aspect of this case's judgment and sentence, including but not limited to the term of imprisonment or probation, restitution, fines, forfeiture, and the term and conditions of supervised release.

The court accepted Acevedo-Rodríguez's guilty plea on March 6, 2021, and sentenced him six days later. At the sentencing hearing, it was undisputed that Acevedo-Rodríguez's criminal history category was I. Therefore, pursuant to the plea agreement, Acevedo-Rodríguez and the government both requested 207 months of

- 4 -

imprisonment.[2] The court accepted the parties' recommendation and sentenced him as such.

On June 21, 2022, the Supreme Court issued its opinion in United States v. Taylor, 596 U.S. 845, 851 (2022), which held that attempted Hobbs Act Robbery, the predicate offense underlying Count Two in Acevedo-Rodríguez's conviction, is not categorically a "crime of violence" as defined in 18 U.S.C. § 924(c)(3)(A). As such, it could not serve as a predicate offense for a § 924(c) conviction. Id. at 852. Acevedo-Rodríguez then filed a motion under 28 U.S.C. § 2255 collaterally attacking his conviction on Count Two. The district court granted the motion, vacated that conviction, and scheduled a resentencing hearing on his remaining counts of conviction.

The U.S. Probation Office filed an amended PSR which again calculated a total offense level of thirty and a criminal history category of I, resulting in a recommended Guidelines sentence of 97 to 121 months. Still, the government argued for a total aggregate imprisonment of 207 months -- the same aggregate sentence to which the court had originally sentenced Acevedo-Rodríguez. It maintained that the sentence "still fit[]"

---

[2] They did so even though the PSR had calculated Acevedo-Rodríguez's adjusted offense level at thirty, rather than twenty-nine. An adjusted offense level of thirty meant that the Guidelines range for the carjackings and robberies was 97 to 121 months' imprisonment, not 87 to 108 months as originally contemplated by the parties.

Acevedo-Rodríguez's conduct since, pursuant to the plea agreement, the government had dismissed seven viable § 924(c) counts predicated on completed robberies and carjackings to which Acevedo-Rodríguez pleaded guilty.[3] The government argued that it could have moved to reinstate the § 924(c) counts but did not because it believed the record was sufficient to justify a 207-month sentence. And it argued that Acevedo-Rodríguez would still benefit from a supervised release term of three years, instead of the five years that accompanied the dismissed § 924(c) conviction.

Acevedo-Rodríguez argued for an imprisonment sentence at the low end of the Guidelines range -- ninety-seven months. Defense counsel recognized that "this was a serious case" and that "the violence [wa]s shown" in the crimes. But he asked the court to consider that Acevedo-Rodríguez had just turned eighteen, was a drug user, and was naive when he committed the crimes. Defense counsel pointed to the fact that Acevedo-Rodríguez worked and studied while serving his imprisonment term and that he had not tested positive for drugs.

---

[3] The minimum terms of imprisonment for the dismissed § 924(c) counts predicated on completed Hobbs Act robberies and carjackings were as follows: Count Sixteen, seven years; Count Eighteen, seven years; Count Twenty, seven years; Count Twenty-Two, ten years; Count Twenty-Four, seven years; Count Twenty-Six, seven years; and Count Twenty-Eight, seven years; yielding a total minimum term of fifty-two years.

The court stated that it considered the 18 U.S.C. § 3553(a) sentencing factors, amended PSR, plea agreement, memoranda, and both parties' arguments that day. It then resentenced Acevedo-Rodríguez to 207 months' imprisonment -- the same sentence imposed before the conviction on Count Two was dismissed. Acevedo-Rodríguez raised no further objections to the sentence or the court's explanations.

This appeal ensued.

## II. Discussion

Acevedo-Rodríguez now challenges the procedural and substantive reasonableness of his sentence to 207 months of imprisonment. As a threshold matter, the parties dispute whether the appellate waiver in Acevedo-Rodríguez's plea agreement bars this appeal. Acevedo-Rodríguez argues that the waiver does not clearly apply to resentencing and, in any event, that it should not be enforced because the government materially breached the plea agreement by recommending a sentence above the low end of the Guidelines range at resentencing, contrary to the parties' agreement. Because we conclude that the resentencing sentence was both procedurally and substantively reasonable, we assume without deciding that the waiver does not bar this appeal. See, e.g., United States v. Angiolillo, 864 F.3d 30, 34 (1st Cir. 2017).

## A. Procedural Reasonableness

First, we address Acevedo-Rodríguez's challenge to the procedural reasonableness of his sentence. He did not preserve this challenge, so we review it for plain error. See United States v. Colón-De Jesús, 85 F.4th 15, 20-21 (1st Cir. 2023). "To survive plain-error review and merit resentencing, a defendant must make four showings: (1) an error occurred, (2) that was clear or obvious, (3) that affected his substantial rights, and (4) that seriously impaired the fairness, integrity, or public reputation of judicial proceedings." Id. at 21 (quoting United States v. Millán-Isaac, 749 F.3d 57, 66 (1st Cir. 2014)).

The district court did not plainly err in explaining its sentence. "A court commits a procedural error where it fails to adequately explain a deviation from the Guidelines range." United States v. Maldonado-Velazquez, 164 F.4th 154, 158 (1st Cir. 2026) (citation modified). In particular, when deviating upwards, the court must "articulat[e] why it believe[s] that the appellant's case differ[s] from the norm." United States v. Melendez-Hiraldo, 82 F.4th 48, 55 (1st Cir. 2023) (second and third alteration in original) (quoting United States v. Del Valle-Rodríguez, 761 F.3d 171, 176, 177 (1st Cir. 2014)). And if it relies on factors already accounted for by the Guidelines, it should explain why those are worthy of "extra weight" in that particular case. United States v. Carmona-Alomar, 109 F.4th 60, 73 (1st Cir. 2024) (quoting

- 8 -

United States v. Rivera-Berríos, 968 F.3d 130, 136 (1st Cir. 2020)).  The court's explanation may be "either explicit[] or [derived] by fair inference from the sentencing record."  United States v. Montero-Montero, 817 F.3d 35, 37 (1st Cir. 2016).

Acevedo-Rodríguez argues that, in fashioning his sentence, the district court committed plain procedural error by (a) relying on factors that were already accounted for by the Guidelines or inherent to his crime without sufficiently articulating why they deserved "extra weight" and (b) failing to consider any mitigating factors.  We address his arguments seriatim.

### 1. Aggravating Factors

First, Acevedo-Rodríguez contends that the Guidelines already account for the numerosity of his crimes through the multiple-count adjustment in USSG § 3D1.4; that they already provide for six- and seven-point enhancements based on use and brandishing of firearms, respectively, see USSG § 2B3.1(b)(2)(A)-(B); and that the use of actual or threatened force is a factor that is generic to robbery and carjacking.  According to Acevedo-Rodríguez, these factors therefore could not support an upward variance without further justification.  We disagree.  To explain why, we briefly walk through how the Guidelines range is typically calculated, and how it was calculated here.

Under the Guidelines, every federal crime has a base offense level. See, e.g., USSG § 2B3.1(a). Courts adjust that level upward or downward based on specific offense characteristics (like the use of a firearm) or general adjustments (like obstruction of justice). See, e.g., USSG § 2B3.1(b)(2)(B). The result is the adjusted offense level for that count. Where, as here, a case involves multiple closely related counts of conviction, the Guidelines require the court to calculate the adjusted offense level for each count and to take the highest adjusted offense level as the starting point. USSG §§ 1B1.1(a)(4), 3D1.1-3D1.3. The court should then increase that level based on the number of "units" assigned to the remaining counts. See USSG § 3D1.4. As relevant here, an offense receives one unit if it is equally serious or one to four offense levels less serious than the highest adjusted offense level in the group.[4] USSG § 3D1.4(a).

In Acevedo-Rodríguez's case, the highest adjusted offense level among his group of related offenses was twenty-eight for Count Twenty-Five (which had a base offense level of twenty, a six-level increase for the use of a firearm, and a two-level increase because the offense involved a carjacking). The remaining

_____

[4] An offense receives one-half unit if it is five to eight levels less serious, and no units if it is nine or more levels less serious. See USSG § 3D1.4(b)-(c).

offenses had offense levels of twenty-seven, twenty-six, or twenty-four, so each fell within four levels of the highest offense level of twenty-eight, meaning each offense was assigned one unit. Adding those units together resulted in seventeen total units. But the Court did not add all the available units to the base level of twenty-eight because USSG § 3D1.4 caps the increase for additional units at five. So Acevedo-Rodríguez's combined adjusted offense level (before deductions) was thirty-three, not forty-five -- the highest adjusted offense level of twenty-eight, plus five units.

Against that backdrop, we cannot say the district court erred -- much less plainly erred -- in considering the sheer number of Acevedo-Rodríguez's multiple back-to-back offenses when imposing an upwardly variant sentence. After all, out of the seventeen robberies and carjackings that Acevedo-Rodríguez committed, only six of them were accounted for in the final offense level -- the base offense (the most serious one) and the five offenses accounted for through units. Eleven counts had no effect on Acevedo-Rodríguez's final offense level. Similarly, because only six of the seventeen counts ultimately affected the final offense level, the Guidelines range did not fully account for the firearm conduct or the actual or threatened force and violence across the entire spree (which would have otherwise been accounted for through adjustments at the specific count level). The district

court thus did not plainly err in considering any of these factors as relevant for an upwardly variant sentence.

Acevedo-Rodríguez separately argues that the district court's statement that the original plea agreement "opened the door to a sentence of 207 months of incarceration" suggests that the court "possib[ly]" believed it did not have to adequately explain the new sentence. We are not sure what this argument is trying to get at. As the government points out, if the court believed no explanation was required, the sentencing transcript would not contain pages of reasoning. Moreover, in context, we read the court as alluding to the fact that the dismissed counts included seven other viable § 924(c) counts (predicated on completed Hobbs Act robberies or carjackings) from which the original sentence could have been replicated, and which altogether spared Acevedo-Rodríguez fifty-two years of mandatory minimum sentences.[5] The government presented both these arguments in its

---

[5] The government may move to "reinstate[]" "counts of an indictment . . . that are dismissed pursuant to a plea agreement" if "the guilty plea [is] subsequently vacated on the motion of the defendant." 18 U.S.C. § 3296(a). Although the statute speaks of the "guilty plea['s]" vacatur, id., it also covers successful collateral motions to vacate a count of conviction, the situation here, see Witham v. United States, 97 F.4th 1027, 1035 (6th Cir. 2024); Jones v. United States, 39 F.4th 523, 526 (8th Cir. 2022); United States v. Moore, 802 F. App'x 338, 342 (10th Cir. 2020); but see United States v. Petties, 42 F.4th 388, 397 (4th Cir. 2022) (raising "questions" about § 3296's application when defendant's "conviction, not his guilty plea, was vacated"). Although the government did not take the steps outlined in § 3296, it pointed to that ability in arguing for the reimposition of the original

resentencing memorandum and during resentencing. See United States v. Rivera-Clemente, 813 F.3d 43, 50 (1st Cir. 2016) ("[A] court's reasoning can often be inferred by comparing what was argued by the parties or contained in the pre-sentence report with what the judge did." (quoting United States v. Ocasio-Cancel, 727 F.3d 85, 91 (1st Cir. 2013)).

## 2. Mitigating Factors

Next, Acevedo-Rodríguez claims the district court failed to consider mitigating factors, including his age, prior drug use, and subsequent rehabilitation. We discern no such error. It is true that, "[w]hen imposing a sentence, a district court is obliged to consider the factors outlined in 18 U.S.C. § 3553(a)." United States v. Ortiz-Pérez, 30 F.4th 107, 111 (1st Cir. 2022). But "the court 'is not required to address those factors, one by one, in some sort of rote incantation.'" Id. (quoting United States v. Dixon, 449 F.3d 194, 205 (1st Cir. 2006)). In fact, "[w]hen a defendant has identified potentially mitigating sentencing factors and those factors are thoroughly debated at sentencing, the fact

207-month sentence, given that the dismissed charges carried the same or similar mandatory minimums. The district court could well consider the prison term carried by these dismissed charges (waiting in the wings, so to speak), and the government's ability to seek their reinstitution, when the court conducted resentencing. The district court, to the extent it made that consideration, did not thereby short-circuit the § 3296 process. Cf. United States v. Narang, No. 19-4850, 2021 WL 3484683, at *6 (4th Cir. Aug. 9, 2021) ("[R]einstatement is ministerial[.]").

that the court 'did not explicitly mention them during the sentencing hearing suggests they were unconvincing, not ignored.'" United States v. Díaz-Lugo, 963 F.3d 145, 152 (1st Cir. 2020) (quoting United States v. Lozada-Aponte, 689 F.3d 791, 793 (1st Cir. 2012)).  That is what happened here.

Recall that at the resentencing, defense counsel asked the court to consider that Acevedo-Rodríguez was eighteen years old and a drug user at the time of the offense.  Counsel also argued that Acevedo-Rodríguez was "trying to study," "trying to comply with all the conditions of the prison that he has been in," and that he had not tested positive on a drug test.  And his sentencing memorandum had noted Acevedo-Rodríguez was a first-time offender.  The court, for its part, expressly stated that it had considered Acevedo-Rodríguez's lack of criminal record, the § 3553(a) factors, and the parties' memoranda.  Thus, we have no reason to think the court overlooked the mitigating factors.  On this record, the more natural reading is that the court found the mitigating factors unpersuasive in light of the seriousness of the offense.  See Díaz-Lugo, 963 F.3d at 152-53.  That is not error. See United States v. Ruperto-Rivera, 16 F.4th 1, 6 (1st Cir. 2021) ("The weighing of sentencing factors represents a judgment call . . . for the sentencing court alone to make." (citation modified)); United States v. Majeroni, 784 F.3d 72, 78 (1st Cir. 2015) (substantive reasonableness) ("That the sentencing court

- 14 -

chose not to attach to certain of the mitigating factors the significance that the appellant thinks they deserved does not make the sentence unreasonable." (quoting United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011))).

### B. Substantive Reasonableness

We turn to consider whether the district court's sentence was substantively reasonable. Acevedo-Rodríguez preserved this challenge by advocating for a more lenient sentence than the one imposed by the district court. See Colón-De Jesús, 85 F.4th at 25. We therefore review it for abuse of discretion. See id. at 26. Under an abuse-of-discretion standard, "considerable deference must . . . be given to the district court's judgment," United States v. Contreras-Delgado, 913 F.3d 232, 239 (1st Cir. 2019), because "there is no one reasonable sentence in any given case but, rather, a universe of reasonable sentencing outcomes," United States v. Burgos, 133 F.4th 183, 195 (1st Cir. 2025) (citation modified). "Our task is simply to determine whether the sentence falls within this broad universe," United States v. Del-Valle-Camacho, 164 F.4th 52, 58 (1st Cir. 2026) (citation modified), guided by "the hallmarks of a substantively reasonable sentence: a plausible sentencing rationale and a defensible result," United States v. Ramírez-Ayala, 101 F.4th 80, 89 (1st Cir. 2024) (citation modified). We think that standard was satisfied here.

- 15 -

We have previously noted that "an adequate explanation for an upward variance and a plausible rationale for that variance are almost always two sides of the same coin." United States v. Valle-Colón, 21 F.4th 44, 50 (1st Cir. 2021). As explained above, the district court provided an adequate explanation for its sentence, and we see no reason to belabor our discussion of the district court's plausible rationale. The court grounded its variant sentence on the seriousness and breadth of Acevedo-Rodríguez's conduct: his participation in at least eleven robberies and six carjackings, all involving actual or threatened violence, including the discharge and brandishing of firearms with intent to commit serious bodily harm. That conduct did not change simply because one count was later vacated on collateral attack. And that point carries particular force here because the counts dismissed pursuant to the plea agreement included seven other viable § 924(c) counts from which the original sentence could have been replicated or increased. See Melendez-Hiraldo, 82 F.4th at 56 n.7 ("A sentencing court may take into account relevant conduct underlying counts dismissed as part of a plea negotiation . . . ." (quoting United States v. Fernández-Garay, 788 F.3d 1, 7 (1st Cir. 2015)).

The length of the sentence here is also defensible. Although the sentence exceeded the top of the Guidelines range by approximately seventy percent, we have affirmed comparable upward

variances where the circumstances warranted it. See, e.g., United States v. Amirault, 224 F.3d 9, 14 (1st Cir. 2000) (upholding seventy-percent departure after analogizing to adjustments for related offenses); United States v. Rostoff, 53 F.3d 398, 411 (1st Cir. 1995) (collecting cases). Ultimately, we cannot say that a 207-months sentence is outside the range of reasonable sentences for Acevedo-Rodríguez's conduct. We discern no abuse of discretion by the district court.

### III. Conclusion

Having resolved Acevedo-Rodríguez's procedural and substantive challenges, we **affirm** the district court's sentence.